SAMUEL T. FIELD *vs.* LAMSON AND GOODNOW MANUFAC-
TURING COMPANY.

Franklin.     September 18, 1894. — November 28, 1894.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP,
& BARKER, JJ.

*Corporation — Rights of Holder of Preferred Stock — Statute — Guaranty —*
*Action — Equity.*

A corporation was authorized by statute to issue preferred stock, the holders of
which "shall be entitled to all the privileges of other members of said corpora-
tion, including the right to vote upon such stock, in person or by proxy, at all
corporate meetings." The statute also provided that "the provisions of law
relative to special stock . . . shall not be held to apply in case of stock issued
under this act." *Held,* that an owner of such preferred stock must be regarded
as a stockholder, and not as a creditor of the corporation.

A statute which authorized a corporation to issue preferred stock provided that
"the holders of said preferred stock shall be entitled to dividends upon the
same annually, out of net profits, in preference and priority to the holders of
any other stock of said corporation, to the amount of such rate per cent thereon,
not exceeding seven per cent, as may be determined by vote of said corporation
prior to issue of the same, which rate per cent of priority shall be expressed in
the certificates of said preferred stock, and shall also share *pro rata* with the
holders of the common stock in any excess divided in any year above a dividend
on the whole stock at said rate per cent, and dividends to the holders of such
preferred stock, at the rate per cent fixed upon, shall be paid for each year from
the time of its issue, cumulatively, before any dividends shall be paid upon any
other stock of said corporation, and, if so voted and expressed in the certificates,
may be guaranteed by said corporation "; and also that "the provisions of law
relative to special stock . . . shall not be held to apply in case of stock issued
under this act." Prior to the issue of the preferred stock, the corporation
determined by vote the rate of dividend to be paid and the form of certificate
to be issued, which in its wording followed the statute, including a guaranty of
the dividends. *Held,* that the effect of the guaranty was not to make the
dividends payable absolutely, whether there were net profits or not, and without
regard to the circumstances or situation of the corporation, but to add to the
statutory liability the direct undertaking of the corporation that net profits
which, in the fair judgment of the officers of the corporation, were available
for dividends, should be devoted first of all, as between the preferred stockhold-
ers and the holders of any other stock, to the payment of dividends on preferred
stock.

A certificate of shares of the preferred stock of a corporation, the issue of which
was authorized by statute, provided as follows: "The holder of the stock rep-
resented by this certificate is entitled to dividends thereon annually out of net
profits, in preference and priority to the holders of any stock of said corpora-
tion except the preferred stock issued under said act, to the amount of six per

cent, which rate per cent was determined by vote of said corporation prior to its original issue; and said holder is also entitled to share *pro rata* with the holders of the common stock in any excess divided in any year above a dividend on the whole stock of said company at said rate of six per cent. The holder of the stock represented by this certificate is entitled to dividends upon it at six per cent for each year from the time of its issue, cumulatively, before any dividends shall be paid upon any stock of said corporation except the preferred stock issued under said act, which dividends are guaranteed by said company, a vote of said company to that effect having been passed prior to its original issue." *Held*, that, no dividend having been declared by the corporation, a holder of such certificate could not maintain an action at law against the corporation for the amount of the dividends therein mentioned.

A corporation, under statutory authority, issued preferred stock, the certificates of which provided that the holders thereof were entitled to dividends thereon annually out of net profits, in preference to the holders of any other stock of the corporation, to the amount of a certain rate per cent; that they were also entitled to share *pro rata* with the holders of the common stock in any excess divided in any year above a dividend on the whole stock of the corporation at the rate so fixed; and that they were entitled further to dividends on the preferred stock at the same rate for each year from the time of its issue, cumulatively, before any dividends should be paid upon any other stock of the corporation, "which dividends are guaranteed" by the corporation. The capital of the corporation became seriously impaired, and its indebtedness amounted to a large sum, and was payable on demand or on short time. The assets, though appearing to be largely in excess of the indebtedness, would have suffered a very great shrinkage from the valuation put upon them if disposed of to pay debts or to close up the business. During a portion of the time only were there net profits sufficient to warrant the payment of dividends on the preferred stock at the rate named in the certificates. The directors of the corporation refused to declare dividends, in part because they believed that it would endanger the ability of the corporation to pay its debts, and in part because they did not deem it proper so to do on account of the impairment of the capital. *Held*, that the directors did not appear so plainly to have acted in disregard of the rights of the preferred stockholders as to justify the interference of a court of equity.

CONTRACT, to recover the amount of dividends alleged to be due the plaintiff as the owner of preferred stock in the defendant corporation. The case was submitted to the Superior Court, and, after judgment for the defendant, to this court, on appeal, upon agreed facts, the material parts of which appear in the opinion.

The case was argued at the bar in September, 1894, and afterwards was submitted on the briefs to all the judges.

*S. T. Field*, pro se.

*H. Winn*, for the defendant.

MORTON, J. The plaintiff is the holder and owner of thirty shares of preferred stock in the defendant company. Part of

them he obtained from the trustee as a creditor of the company under the indenture of compromise, and part of them he acquired by purchase from another person.* Although the shares differ in important respects from common shares in the defendant company, we think that the plaintiff must be regarded as a stockholder, and not as a creditor. *Williston* v. *Michigan Southern & Northern Indiana Railroad,* 13 Allen, 400. *Williams* v. *Parker;* 136 Mass. 204. *St. John* v. *Erie Railway,* 22 Wall. 136. *Lockhart* v. *Van Alstyne,* 31 Mich. 76. *Taft* v. *Hartford, Providence, & Fishkill Railroad,* 8 R. I. 310. *Boardman* v. *Lake Shore & Michigan Southern Railway,* 84 N. Y. 157, 178. *Belfast & Moosehead Lake Railroad* v. *Belfast,* 77 Maine, 445. *Chaffee* v. *Rutland Railroad,* 55 Vt. 110. Cook, Stock & Stockholders, (3d ed.) §§ 267, 271.

The stock was issued under and in accordance with the provisions of St. 1885, c. 349. By § 2 of that act it is expressly provided that the holders of preferred stock " shall be entitled to all the privileges of other members of said corporation, including the right to vote upon such stock, in person or by proxy, at all corporate meetings." Independently of other considerations, this provision plainly puts the preferred shareholders upon the footing of members of the corporation. By § 3 of the act it is provided that " the provisions of law relative to special stock . . . shall not be held to apply in case of stock issued under this act," thus removing the objection which might otherwise be made under *Williams* v. *Parker,* 136 Mass. 204, that it is the policy of the Commonwealth to regard special stockholders, and, by parity of reasoning, preferred stockholders, as creditors.

It is immaterial how or where ' the plaintiff obtained his shares. The preference belongs to the stock, and not to the

---

* The indenture of compromise was executed on July 20, 1885, by and between the creditors of the defendant corporation, the corporation, and Horace H. Mayhew, and provided, in substance, that the creditors were to assign their claims to Mayhew in trust; that he was to convert such claims into bonds and preferred stock of the corporation in certain proportions, which were to be issued by the corporation to him; that the bonds were to be secured by mortgage and pledge of the property of the corporation to the trustee; and that he was to distribute the bonds and stock to the subscribers to the indenture as therein specified.

stockholder.   Otherwise the stock would be preferred as long as it was held by a creditor who was a party to the indenture of compromise, and would lose its privilege when it passed into the possession of one who was not a party to that instrument.

The principal question relates to the right of the plaintiff to dividends, and involves, first, the construction of the third section of the act aforesaid, and, secondly, whether this action can be maintained, or, if not, whether there is a remedy in equity.

Section three provides that " The holders of said preferred stock shall be entitled to dividends upon the same annually, out of net profits, in preference and priority to the holders of any other stock of said corporation, to the amount of such rate per cent thereon, not exceeding seven per cent, as may be determined by vote of said corporation prior to issue of the same, which rate per cent of priority shall be expressed in the certificates of said preferred stock, and shall also share *pro rata* with the holders of the common stock in any excess divided in any year above a dividend on the whole stock at said rate per cent; and dividends to the holders of such preferred stock, at the rate per cent fixed upon, shall be paid for each year from the time of its issue, cumulatively, before any dividends shall be paid upon any other stock of said corporation, and, if so voted and expressed in the certificates, may be guaranteed by said corporation." Prior to the issue of said· preferred stock the corporation and the directors determined by vote the rate of dividend to be paid, and the form of certificates to be issued.   The certificates issued to the plaintiff were in the form thus determined, and so much of them as is now material is as follows:' " Said stock is issued under and subject to an act of the General Court of the Commonwealth of Massachusetts, approved June 18, 1885, entitled ' An Act to authorize the Lamson and Goodnow Manufacturing Company to issue preferred stock,' and its holder has all the rights provided for the holders of such preferred stock by this act.   The holder of the stock represented by this certificate is entitled to dividends thereon annually out of net profits, in preference and priority to the holders of any stock of said corporation except the preferred stock issued under said act, to the amount of six per cent, which rate per cent was determined by vote of said corporation prior to its original issue; and said holder is

also entitled to share *pro rata* with the holders of the common stock in any excess divided in any year above a dividend on the whole stock of said company at said rate of six per cent. The holder of the stock represented by this certificate is entitled to dividends upon it at six per cent for each year from the time of its issue, cumulatively, before any dividends shall be paid upon any stock of said corporation except the preferred stock issued under said act, which dividends are guaranteed by said company, a vote of said company to that effect having been passed prior to its original issue." It is to be observed that the act only authorizes the payment of dividends on the preferred stock out of net profits, and that to secure their final payment in case there should be no net profits or a deficiency at any time, but should be net profits later, the dividends are made payable cumulatively. The certificates follow the act. And we think that the effect of the guaranty which the act authorized, and which was voted by the company and is contained in the certificates, was not to make dividends of six per cent payable at all events and whether there were net profits or not, but to add to the statutory liability the direct undertaking of the company that the net profits should be devoted first of all, as between the preferred stockholders and the holders of any other stock, common or special, to the payment of preferred dividends. In the strict sense of the word, "guaranty" or "guarantee" applies to an undertaking by another, though it is sometimes used in the sense of "warranty" or "warrant." *Wiley* v. *Athol*, 150 Mass. 426, 434. To give it in the present case the effect of rendering the company absolutely and at all events liable for the dividends would be inconsistent with the provision authorizing dividends on preferred stock to be made from net profits. It cannot be supposed that the Legislature, having provided for the payment of dividends from net profits, and by implication forbidden their payment from anything else, would in almost the next sentence authorize the company to incur a liability which might compel it to pay dividends though its business was conducted at a loss. A construction which attached such a meaning to the guaranty which the company was authorized to give would nullify the provision in regard to the payment of dividends from net profits. In the case of *Williams* v. *Parker*, 136 Mass. 204, not only was

there no provision in St. 1855, c. 143, § 1, that the dividends should be payable from net profits, but that statute expressly provided that the company was " to give its guaranty that each share of said stock shall receive semiannual dividends of four dollars on each share," and the guaranty accordingly was held to be an absolute one. That case was much stronger than this. Generally the use of the word "guaranteed," as applied to dividends upon preferred stock, whether in connection with the word "preferred" or alone, has not been held to import an absolute liability. *Williston* v. *Michigan Southern & Northern Indiana Railroad*, 13 Allen, 400. *Taft* v. *Hartford, Providence, & Fishkill Railroad*, 8 R. I. 310. *Lockhart* v. *Van Alstyne*, 31 Mich. 76. *Boardman* v. *Lake Shore & Michigan Southern Railway*, 84 N. Y. 157. *Miller* v. *Ratterman*, 47 Ohio St. 141. *Stevens* v. *South Devon Railway*, 9 Hare, 313. *Henry* v. *Great Northern Railway*, 1 DeG. & J. 606. *Sturge* v. *Eastern Union Railway*, 7 DeG., M. & G. 158. Cook, Stock & Stockholders, (3d ed.) §§ 267–275. In some instances its use has led to preferred dividends being regarded as cumulative. *Stevens* v. *South Devon Railway*, *Henry* v. *Great Northern Railway*, and *Boardman* v. *Lake Shore & Michigan Southern Railway*, *ubi supra*. But although in the present case that effect cannot be given to it, since it is expressly provided that the dividends shall be cumulative, we think that that fact, in view of the provision already noted, that the dividends are payable from net profits, should not cause the guaranty to be regarded as an absolute one. Moreover, the preferred stockholders are entitled to dividends as dividends, and not as interest, and as members of a corporation, and not as creditors. Thus it is provided that "the holders of said preferred stock shall be entitled to dividends," etc. They are to share with holders of common stock in excess divided above a dividend upon the whole stock at the rate fixed for the preferred stock. "And dividends to the holders of such preferred stock . . . shall be paid . . . cumulatively, before any dividends shall be paid upon any other stock," etc. Though the company was authorized to issue the stock in payment of its indebtedness, there is no provision in the act that those creditors who have accepted the stock in payment of their debts are henceforth to be regarded in any other light

than that of stockholders. The fact that the dividends were payable cumulatively out of net profits, at the rate of six per cent, in preference to any other stock, well may have operated as a sufficient inducement to creditors to exchange their demands against the corporation for preferred stock, especially if the prospects of successful business were good, as it fairly may be assumed that the parties interested supposed them to be. Creditors may also have thought that this was far better than insolvency. Good and sufficient reasons can be found for the action of the creditors in changing their demands against the company for its preferred stock, without construing the guaranty as importing an absolute undertaking on its part to pay dividends at the specified rate. Some of them are stated in the preamble of the indenture of compromise.

Neither do we think that the guaranty can be regarded as an undertaking that whenever there were net profits they should be divided without regard to the circumstances or situation of the company among the preferred stockholders. The act itself does not in terms compel such a division. And we see nothing in it to take the case out of the general rule, that, in the first instance, the decision of the question whether there shall or shall not be dividends lies with the company or its agents. Looking at § 3 in connection with the rest of the act, we think that the reasonable construction of it is, that, if there are net profits which, in the fair judgment of the company or its agents, taking all the circumstances into account, are or should be available for dividends, then the preferred stockholders are entitled to receive dividends on their stock, at the rate fixed by the vote of the company and expressed in the certificates, before any dividends are paid on any other stock, and that if the company has passed any dividends the preferred stockholders are entitled to have them made good to them before any dividends are paid on any other stock. This conclusion derives some support from the concluding sentence of that section, already referred to, that " the provisions of law relative to special stock," upon which corporations are expressly required to pay " a fixed half-yearly sum or dividend," (Pub. Sts. c. 106, § 42, *Williams* v. *Parker*, 136 Mass. 204,) shall not be held to apply in the case of stock issued under this act.

If under § 6, in connection with Pub. Sts. c. 106, § 60, the officers could be made liable for a dividend which the law compelled them to declare, or for a debt which they could not prevent, (which we do not decide,) then that fact also would furnish an argument against regarding the guaranty as an absolute one. We discover nothing in the way of contemporaneous construction at variance with that which we have adopted.

No dividend having been declared, it follows that this action, which is a suit at law, cannot be maintained. *Williston* v. *Michigan Southern & Northern Indiana Railroad*, 13 Allen, 400. The remaining question is whether, upon the facts agreed, if applied to proceedings in equity, the plaintiff could have relief. We assume that the directors and manager could be compelled to make dividends out of net profits to the preferred stockholders if it turned out that they were acting unreasonably in refusing to declare them; but we do not think that in this case the plaintiff would be entitled to relief. The capital is seriously impaired. Though the indebtedness was reduced by the compromise, and has been further reduced by payments since, it still amounts to a large sum, and is payable on demand or on short time. The bonds matured in August, 1890. None of them were paid before maturity, and the concern could not have paid any of them without seriously crippling it, or destroying its business. It is true that the assets seem to be largely in excess of the indebtedness, and that it has been held that preferred stockholders are not bound to wait for dividends till the impaired capital has been made good, and the debts have been paid. *Stevens* v. *South Devon Railway*, 9 Hare, 313. *Belfast & Moosehead Lake Railroad* v. *Belfast*, 77 Maine, 445. But the valuation put upon the assets appears to be to a considerable extent a book-keeping one; and it is agreed that, if the company should be obliged to dispose of them to pay its debts or to close up its business, they would suffer a very great shrinkage from the valuation put upon them. No dividend has been paid upon the preferred stock, and none upon the common stock, since 1882. It is not contended that there were any net profits prior to January 1, 1886, sufficient to justify a dividend. From January 1, 1886, to July 1, 1893, after deducting all expenses and also current interest on its debt, and allowing for depreciation of

property, the business "resulted in net gains of actual cash value in assets more than in liabilities sufficient in amount to meet the payment of dividends on the preferred stock, at the rate provided for in the certificates, for every year since the time of its issue to the trustee, with interest." But in the year ending July 1, 1894, there were no net profits. During half the time, therefore, from the date of compromise in July, 1885, to July, 1893, there seem to have been no net profits, showing that the business was somewhat precarious in its nature. The controlling purpose of the directors and manager has been to provide for the payment of the debts, and to put the concern in a position strong enough to secure renewals of such of its debts as could not be paid when due. Their discretion, it is agreed, has been honestly exercised to that end, and they have refused to declare dividends, in part because they believed that it would endanger the ability of the company to pay its debts, and in part because they did not deem it proper to declare dividends on account of the impairment of the capital. We do not think that the directors and manager appear so plainly to have acted in disregard of the rights of the preferred stockholders as to justify the interference of a court of equity. The directors and manager were bound to have regard to all of the interests intrusted to them. If one class was to be favored above another, the creditors were to be looked after in preference to the stockholders. It was for the benefit of the stockholders, the preferred as well as the common, that the impaired capital should be made good, and that the business, if possible, should be put on a sound and enduring basis. We cannot say that, if dividends had been paid, the result might not have been to injure the concern, nor that the conduct of the directors and manager has not been on the whole judicious. *Barnard* v. *Vermont & Massachusetts Railroad*, 7 Allen, 512, 516. *New York, Lake Erie, & Western Railroad* v. *Nickals*, 119 U. S. 296. Cook, Stock & Stockholders, (3d ed.) § 271.

The result is, that, in the opinion of the majority of the court, the judgment must be affirmed, and it is

*So ordered.*