DELIA C. ROBERTS, Appellant, *v.* ROBERTS-WICKS COMPANY, Respondent.

1. BUSINESS CORPORATIONS — CONSTRUCTION OF PROVISIONS IN CHARTER AND CERTIFICATES RELATING TO DIVIDENDS ON PREFERRED STOCK. Where the charter of a business corporation and the certificates issued to holders of preferred stock provide that such stock shall be entitled to dividends, at a specified rate, out of the surplus profits arising from the business, before any dividend be paid on the common stock, and that such dividends shall be cumulative and in case of non-payment shall bear interest at a fixed rate from the date when payable, such provision constitutes a valid contract between the company and the preferred stockholders, which is binding upon all other stockholders.

2. REDUCTION OF CAPITAL STOCK WHILE COMPANY IS IN DEFAULT OF DIVIDENDS ON PREFERRED STOCK — RIGHTS OF PREFERRED STOCKHOLDERS. The fact that such corporation, having failed to pay any dividends on its preferred stock for three years, reduced its capital stock under the statute (Stock Corporation Law [L. 1890, ch. 564], § 44, as amd. by L. 1892, ch. 688), giving to its stockholders their proportionate number of shares in exchange for their former holdings, does not affect the rights of the preferred stockholders as to previous arrears of dividends; as a result of such reduction, the preferred stockholders have a less number of shares, but, as between themselves and the other stockholders, they are still creditors for the arrears of dividends due from the company on the shares of preferred stock which they had previously held, and are entitled to be paid such arrears, with the stipulated interest thereon, before any of the surplus profits can be appropriated to a dividend upon the common stock.

3. RESOLUTION OF BOARD OF DIRECTORS DIRECTING PAYMENT OF ARREARS OF DIVIDENDS ON REDUCED PREFERRED STOCK AND ALSO ON COMMON STOCK. A subsequent resolution of the board of directors, adopted after such corporation had accumulated a surplus of profits,

17

directing the payment of the amount due to the preferred stockholders in full of dividends upon their reduced stock, with interest thereon from the time the last dividend had been paid and also declaring a dividend on the common stock, is invalid and cannot be sustained; it was the duty of the directors in dividing the surplus profits to apply them, in first order, to the satisfaction of the debt to the preferred stockholders for the arrears of dividends on the whole number of their shares outstanding during the three years prior to the reduction of the capital stock, with the stipulated interest accrued thereon.

4. REDUCTION OF CAPITAL STOCK — SURPLUS CREATED THEREBY CANNOT BE APPLIED UPON ARREARS OF DIVIDENDS DUE TO PREFERRED STOCKHOLDERS. The preferred stockholders have, however, no right to any surplus created by the reduction of capital stock; such surplus cannot be regarded as " surplus profits arising from the business of the corporation," since it is not within the intendment of the agreement with respect to dividends on the preferred stock, and its distribution, when made, can only be legally effected by dividing it among all the stockholders ratably and without preference, so that it is not applicable to the claim of the preferred stockholders for the arrears of unpaid dividends.

*Roberts* v. *Roberts-Wicks Co.*, 102 App. Div. 118, reversed.

(Argued February 12, 1906; decided March 13, 1906.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered March 1, 1905, upon the submission of a controversy under section 1279 of the Code of Civil Procedure.

It appears that the defendant was duly incorporated under the Business Corporations Law, for the manufacture and sale of clothing, in 1895, with a capital stock of $200,000, divided into 2,000 shares; 500 shares ($50,000) being preferred stock, and 1,500 shares ($150,000) being common stock; each share being of the par value of $100.

The certificate of incorporation provided that " out of the surplus profits arising from the business of the corporation the holders and owners of the preferred stock shall be first entitled to, and be paid each year, a dividend equal to six per cent, * * * payable in equal semi-annual payments, before any dividends shall be paid on the common stock; such dividend shall be cumulative, and, in case of non-payment, shall bear interest at the rate of six per cent from the date

when payable. All the remaining surplus profits of such corporation shall belong to the common stock, and be divided among the holders and owners thereof, as the board of directors shall direct. In all other respects the preferred and common stock shall be alike."

On the 16th day of April, 1898, the capital stock of the corporation was duly increased to $300,000, divided into $75,000 of preferred stock and $225,000 of common stock; represented by 3,000 shares of the par value of $100, each. There was no change made in the form of the certificate of incorporation in the preference of the preferred stock. All of the stock was duly issued and paid for in cash at par.

Prior to July 1st, 1901, the plaintiff became the owner of 250 shares, or $25,000, of the preferred stock of the defendant and held a certificate therefor. The certificate provided, as before, that the owners of the preferred stock of the company were entitled to an annual dividend of six per cent, payable in equal semi-annual payments out of the surplus profits of the company, before any dividend was payable on the common stock; that such dividend on the preferred stock was cumulative and, in case of non-payment, should bear interest at the rate of six per cent from the date when payable; that all the remaining surplus profits of the company should belong to the common stock and that in all other respects the preferred and common stock were alike.

From July, 1901, to June 25, 1904, the defendant had made no surplus profits from its business and its capital of $300,000 had become impaired to the extent of $90,861.85. On the latter date, the defendant duly reduced its capital stock from $300,000 to $200,000, divided into $50,000 of preferred stock and $150,000 of common stock, and the corporate capital was as it had been prior to the increase of April, 1898. This reduction left a surplus of $9,138.15 over the capital stock of $200,000.

The plaintiff voted against the reduction of the capital stock of the defendant; but after the said reduction, and in October, 1904, she surrendered her certificate for 250 shares,

($25,000), of preferred stock and received a new certificate, in the same form, for 166 shares and scrip for fractional parts of a share. Through purchase of additional scrip and the exchange thereof she now holds certificates for 167 shares, ($16,700), of the preferred stock. Semi-annual dividends, at the rate of six per cent per annum, were paid upon the preferred stock up to July 1st, 1901. Since that time none had been paid upon such stock until December, 1904. Between June, 1904, when the capital stock was reduced, and December 1st, 1904, the defendant gained surplus profits, to the amount of $15,087.40.

On December 20th, 1904, the board of directors adopted a resolution directing "the amount due to the preferred stockholders in full of dividends and accrued interest thereon to December 1st, 1904, upon the $50,000 preferred stock of the company, be paid January 2d, 1905, to the preferred stockholders of record December 26th, 1904." The board, further, declared a dividend of one per cent upon the $150,000 of common stock, payable on May 1st, 1905.

The dividends declared on the preferred stock included all the dividends, to which the plaintiff was entitled upon her then holding of $16,700 of preferred stock, and the interest accrued thereon from the time the last dividend had been paid up to December 1st, 1904. The plaintiff claims that she was entitled to be paid the dividends payable on $25,000 of preferred stock up to June 25th, 1904, the date of the reduction of the capital stock, cumulatively; so that interest should be added to each unpaid dividend from the date when payable upon such amount of preferred stock. The Appellate Division, in the fourth department, awarded judgment to the defendant and the plaintiff has appealed to this court.

*H. J. Cookinham* for appellant. The $9,138.15 item in the statement of June 25, 1904, is surplus earnings. (*Williams* v. *W. U. Tel. Co.*, 93 N. Y. 162; *People ex rel. S. Mfg. Co.* v. *Wemple*, 78 Hun, 63; *People ex rel. A. A. & T. Co.* v. *Roberts*, 82 Hun, 313; *Christensen* v. *Eno*, 106 N. Y.

97; *M., etc., Bank* v. *Townsend*, 5 Blatchf. [U. S.] 315;
*Farrington* v. *Tennessee*, 95 U. S. 679; *Strong* v. *B. C.
R. R. Co.*, 93 N. Y. 426.) Plaintiff is entitled to receive,
on the $25,000 preferred capital stock held by her up to
June 25, 1904, semi-annual dividends, at the rate of six
per cent per annum, with interest thereon from the date
when the same should have been paid up to the time of
payment, before any dividend can be paid on the common
stock. (*Ernst* v. *E. M. I. Co.*, 24 Misc. Rep. 583; *Kent* v.
*Q. S. M. Co.*, 78 N. Y. 159; *Einstein* v. *R. G. & E. Co.*,
146 N. Y. 46; *Sutherland* v. *Olcott*, 95 N. Y. 100; *Camp-
bell* v. *A. Z. Co.*, 122 N. Y. 455; *Stoddard* v. *Lum*, 159 N. Y.
265; *Howarth* v. *Angle*, 162 N. Y. 179; *Richmond* v. *Irons*,
121 U. S. 27; *Wood* v. *Lary*, 47 Hun, 550; *Prouty* v. *M.
S. & N. I. R. R. Co.*, 1 Hun, 655.)

*William Kernan* for respondent. The surplus of $9,138.15
produced by the reduction of the capital stock of the corpora-
tion was a surplus of capital; it was not surplus profits or sur-
plus earnings, out of which dividends upon the preferred
stock could be paid as claimed by the plaintiff. (L. 1890, ch.
567; L. 1892, ch. 688, §§ 23–46; Penal Code, § 594; Taylor on
Corp. § 565; Cook on Corp. [5th ed.] §§ 271, 546; *Seeley* v.
*N. Y. E. Bank*, 8 Daly, 400; 78 N. Y. 608; *Strong* v. *B. C.
T. R. R. Co.*, 93 N. Y. 426; *Merz* v. *I. C. Co.*, 87 Hun, 440;
*Williams* v. *W. U. T. Co.*, 93 N. Y. 162; *People* v. *L. Ins.
Co.*, 92 N. Y. 458; *St. John* v. *E. R. R. Co.*, 10 Blatchf.
[U. S.] 271; 22 Wall. 136; *N. Y., L. E. & W. R.
R. Co.* v. *Nickalls*, 119 U. S. 296, 308; *M. R. R. Co.*
v. *Tennessee*, 153 U. S. 486.) Plaintiff is not entitled to
dividends on the whole of the $25,000 of her preferred
capital stock from July 1, 1901, the date to which dividends
were paid, to June 25, 1904, when her said stock was reduced
to $16,700. She is entitled to such dividends on the said
$16,700 of stock now held by her, and which dividends were
declared to her by the defendant December 20, 1904; but she
is not entitled to any dividend on the $8,300 of said stock

canceled by reduction of the capital stock of the defendant. (*Seeley* v. *N. Y. E. Bank*, 8 Daly, 400; *Strong* v. *B. C. T. R. R. Co.*, 93 N. Y. 426; *Merz* v. *I. C. Co.*, 87 Hun, 440; *Williams* v. *W. U. Tel. Co.*, 93 N. Y. 162; *People* v. *L. Ins. Co.*, 92 N. Y. 458.)

GRAY, J. From the foregoing facts, which the parties have stipulated as resuming the whole situation, it is apparent that our consideration of this appeal is, in no degree, embarrassed by any question of the power of the directors to increase the capitalization of this company in 1898, or to reduce it in 1904. In each case, we may assume, it was duly and legally effected and the only question is whether when, subsequently to the reduction of the capital stock in June, 1904, a distribution of the surplus profits was declared, the plaintiff, as a preferred stockholder, was entitled to be paid for arrears of dividends, payable during the years prior to the reduction, upon the 167 shares of preferred stock, of which she was then the actual holder, or upon the 250 shares of which she had previously been the holder.

When, in 1898, the capital stock was increased to 3,000 shares, or $300,000, the plaintiff became the holder of 250 shares of preferred stock and she received the six per cent dividends thereon down to July 1st, 1901. From that time down to June, 1904, the company made no surplus profits from its business; the capital had become impaired to the extent of upwards of $90,000 and no dividends had been declared to its stockholders. A reduction of the capital stock being then resolved upon, it was accomplished, so as to establish it at its former amount of 2,000 shares, or $200,000. Thereafter, the business prospered; so that, in the following six months, the earnings had so increased as to show a surplus of profits accumulated in the corporate treasury and the directors resolved to distribute them by way of a dividend. By their resolution, a payment was to be made of "the amount due to the preferred stockholders in full of dividends and accrued interest thereon to December 1, 1904, upon the

$50,000 preferred stock of this company," etc., and a further dividend of one per cent was declared upon the common stock. The payment to the preferred stockholders, however, as to arrears of dividends being made upon the number of shares as reduced, the complaint of this appellant, in effect, is that the defendant has measured its obligation to its preferred stockholders, with respect to the past, by the amount of their present holdings; whereas its obligation upon that much of the preferred stock, which had been theirs prior to the reduction of the capital stock, had never been fulfilled, nor released.

In the charter and in the certificates issued to the preferred stockholders, it was stated, most explicitly, what was the nature of the preference, which was accorded to that class of stockholders; namely, to be paid " out of the surplus profits arising from the business of the corporation * * * a dividend equal to six per cent per annum on the preferred stock, payable in equal semi-annual payments, before any dividend shall be paid on the common stock; such dividend on the preferred stock shall be cumulative and in case of non-payment shall bear interest at the rate of six per cent per annum from the date when payable." This was a valid contract between the company and the preferred stockholders, which was binding upon all other stockholders. (*Kent* v. *Quicksilver Mining Co.*, 78 N. Y. 159, 180.) Each class of stock was a part of the whole capital stock and both classes were made by the charter alike, in all respects, except in the one respect that the preferred stock was entitled to have " the surplus profits arising from the business" appropriated, in first order, to the payment of six per cent dividends, cumulatively. Now this was as much an agreement of the common stockholders, as it was the agreement of the corporation and the right of the preferred stockholder was inviolable. It assured to him, in effect, that if the corporate earnings failed to show surplus profits sufficient to pay a dividend due on the preferred stock, to the extent of the default in payment and of the accruing interest thereon, there would be a specific

charge upon all subsequent surplus profits gained by the
company. In other words, the dividends agreed to be paid
upon such shares of stock were a charge upon the profits
of the company for all time and all arrears of such dividends,
with accrued interest, were to be paid out of any
moneys applicable to such payment before any payment
should be made to the common stockholders. (*Boardman* v.
*L. S. & M. S. R. Co.*, 84 N. Y. 157; *Sturge* v. *E. N. R.
R. Co.*, 31 Eng. L. & Eq. 406; *Henry* v. *G. N. R. Co.*, 3
Jurist [N. S.], part 1, 1117.) This right, necessarily, survived
the reduction of the capital stock, as to previous arrears
of dividends; unless the obligation of the company had, in
some way, been discharged. Concededly, it survived as to the
preferred stock in its reduced amount and what was there in
the action of reducing the capital stock, which was operative
to cancel it as to the arrears of unpaid dividends upon the
shares of stock which were retired, or cut off, by the reduction?
The Stock Corporation Law, (Chap. 688, § 44), authorized
the reduction to be made; but that statute and the proceedings
under it could not affect any vested right, nor impair
the force of any corporate obligation. Nor was it intended to
accomplish any such thing; or any thing more than to authorize
the holders of a majority of the stock, when the circumstances
seemed to them to justify it, to increase, or to reduce,
the amount of the capital stock. Its reduction left the affairs
and obligations of the corporation just as they had been, with
the sole difference of the lessened capitalization of the concern.
There would still remain the obligation of the corporation
upon any unperformed agreement; for no obligation was
satisfied thereby. Its agreement to pay dividends on the preferred
stock had not been fulfilled and, so long as the corporation
was a going concern, this default created an indebtedness,
which was payable whenever, in the future, it should
accumulate surplus profits from the conduct of the business.

The preferred stockholders, as the result of the reduction of
capital stock, would hold a less number of shares; but they
would still be creditors for the arrears of dividends due by

the company on the shares of preferred stock, which they had previously held. They may not have been creditors of the corporation, in a technical sense ; but, as between themselves and other stockholders, they were as creditors, with demands to be fully paid certain arrears of dividends before any of the surplus profits should be appropriated to a dividend upon the common stock. The common stockholders held their shares of stock subject to that prior charge upon the net earnings. No acts of theirs could destroy that right and it, of course, in no wise, depended upon any declaration of the board of directors. Directors have a wide discretion in the management of the corporate affairs and their declaration of a dividend from surplus assets, when honestly exercised, will not be interfered with by the courts ; but that does not mean that they have the power to discriminate in the division of the surplus to the impairment of any prior right thereto.

When the defendant's directors met, in December, 1904, to act upon the question of dividends, their duty was, in dividing the surplus profits, to apply them, in first order, to the satisfaction of the debt to the preferred stockholders for arrears of dividends on the whole number of their shares, which were outstanding during the three years prior to July, 1904, before the capital stock was reduced. For the purpose of such a dividend, however, only such surplus as represented the profits of the business could, legally, be availed of, and this brings us to consider the question of the disposition of the surplus of capital, left upon the reduction of the capital stock, which the appellant claims to be equivalent to surplus profits and, hence, to be applicable upon the company's debt to the preferred stockholders for arrears of dividends. As it has been stated, the capital of the defendant had become impaired, by June, 1904, to the extent of $90,861.85, and this necessitated the reduction as then effected. The reduction to $200,000, thus, left the sum of $9,138.15, which was an excess, or surplus, of capital. Whether it consisted in funds, or in property, we are not informed and it is not material to our consideration. We may assume that the directors could

have converted it into cash and have distributed it by way of dividends; but the preferential right of the preferred stockholders did not reach to a distribution of that which was capital, nor create any charge upon capital. That which constitutes the capital stock of a corporation belongs to all of its stockholders, proportionately to their holdings. It is divided into shares and each share represents the holder's proportionate interest. (*Jermain* v. *L. S. & M. S. R. Co.*, 91 N. Y. 492.) Upon dissolution, or in liquidation, it entitles him to share ratably in the assets. If the directors had undertaken to divide this surplus of capital, it was apportionable, only, among all the stockholders ratably. The statute contemplated nothing else than that. Indeed, it is inferable, perhaps, that the only authorization to dispose of such corporate property is to return it to the stockholders. The statute reads, (Stock Corporation Law, § 46), "If the capital stock is reduced, the amount of capital over and above the amount of the reduced capital shall, if the meeting or consents so determine or provide, be returned to the stockholders pro rata, at such times and in such manner as the directors shall determine." But, assuming that the directors in their discretionary management of the company's affairs, concluded, and were empowered, to distribute this surplus of capital, the preferred stockholders would have no legal, or equitable, claim upon it in satisfaction of past due and unpaid dividends. That was not the contract. Their only right would be to share in such a distribution ratably with the common stockholders. (*Strong* v. *Brooklyn C. T. R. R. Co.*, 93 N. Y. at p. 435.) The charter and the contract made them alike in all respects except as to dividends. Dividends, as the rule, are not payable out of the capital of a corporation; but only from the surplus profits arising from the business carried on and that was the contract here. When the property of a corporation has *accumulated* in excess of its chartered capital, the excess may be regarded and dealt with as constituting a surplus of profits. For a fuller discussion of such questions, I may refer to the cases of *Kent* v. *Quicksilver Mining Co.*, (78 N. Y.

159, 179); *Williams* v. *Western Union Telegraph Co.*, (93 ib. 162, 188, 191, 192); *Strong* v. *Brooklyn C. T. R. R. Co.*, (93 ib. 426, 433, 435) and *Beveridge* v. *N. Y. E. R. R. Co.*, (112 ib. 1). In the present case, it must be borne in mind that the $9,138.15 remained in the corporate accounts, after the reduction of capital stock, as a portion of the former capital and it was, in no sense, like an excess of property, which had been accumulated in the conduct of the business beyond the fixed capital. It did not represent " surplus profits arising from the business; " it was not within the intendment of the agreement with respect to dividends on the preferred stock and its distribution, when made, could only be legally effected by dividing it among all the stockholders ratably and without preference. (See *Seeley* v. *N. Y. Exchange Bank*, 8 Daly, 400; affd. on opinion below, 78 N. Y. 608, and Cook on the Law of Stock, etc., § 278.)

I have, therefore, reached the conclusion as to this surplus of capital, left on hand after the reduction of the capital stock from $300,000 to $200,000, that it was not applicable to the claim of the preferred stockholders for the arrears of unpaid dividends. I am, equally, clear in the conclusion that, in making the distribution of the surplus profits arising from the conduct of the business, the directors were obliged to apply them, in first order, towards the satisfaction of all claims, which the preferred stockholders, at any time, held against the company, based upon arrears of unpaid dividends and the stipulated interest accrued thereon. Such was the express obligation of the corporation; which, so far as the record shows, has never been discharged or released.

I advise the reversal of the judgment appealed from and that the plaintiff appellant have judgment against the defendant respondent entitling her to be paid, from the surplus profits arising from the corporate business, the annual dividends of six per cent per annum in arrears upon her 250 shares, or $25,000, of preferred stock up to June 25th, 1904, and on her 167 shares, or $16,700, of such stock thereafter, with interest at the rate of six per cent per annum from the date

when each dividend was payable until the date of payment, before any dividend is paid upon the common stock, with costs to the appellant in both courts.

Cullen, Ch. J., Haight, Vann, Willard Bartlett and Chase, JJ., concur; Edward T. Bartlett, J., dissents.

Judgment accordingly.