EDWARD D. PAGE & others *vs.* WHITTENTON MANUFACTURING COMPANY & others.

Suffolk.    December 12, 1911. — March 8, 1912.

Present: RUGG, C. J., MORTON, HAMMOND, BRALEY, & SHELDON, JJ.

*Corporation,* Rights of common and preferred stockholders. *Equity Jurisdiction,* To enforce rights of minority of stockholders of corporation.

Where the capital stock of a corporation consists of eight thousand shares of common stock and two.thousand shares of preferred stock, and in case of liquidation the holders of the common stock have no right to share in the corporate assets until the holders of the preferred stock have received the full value of their shares with cumulative dividends thereon, the holders of a majority both of the common and of the preferred stock, acting in good faith for the benefit of the corporation, lawfully may adopt and carry out a plan for raising money necessary for the continuance of the business of the corporation, by reducing the amount of the common stock to one thousand shares and providing for the issue of three thousand shares of new common stock at par, the preferred stockholders to have the right to subscribe for one new share for each old share and the common stockholders to have the right to subscribe for one new share for each share of the common stock after the reduction, representing eight of the old shares, and a minority of the stockholders, whose holdings are principally of the common stock, cannot maintain a suit in equity to enjoin the majority from carrying out the plan, although its result will be to diminish greatly the relative number of shares and the voting power of the complaining stockholders.

BILL IN EQUITY, filed in the Supreme Judicial Court on April 25, 1911, by the holders of forty-six per cent of the common stock and about twelve per cent of the preferred stock of the defendant corporation, to restrain the defendant corporation and the individual defendants as the holders of about fifty-three and one half per cent of the common stock and about fifty-three and one half per cent of the preferred stock of the defendant corporation from carrying out a plan, approved by the directors, to raise additional capital for the defendant' corporation by reducing its common stock from eight thousand shares to one thousand shares and then increasing such common stock to four thousand shares by issuing three thousand shares of common stock at par, the preferred stockholders to have the right to subscribe for one new share for each old share and the common stock-

holders to have the right to subscribe for one new share for each share of common stock after the reduction, representing eight of the old shares.

The case was referred to James D. Colt, Esquire, as master. The important facts found by him are stated in the opinion. The plaintiffs filed exceptions to the master's report relating to certain findings of fact made by the master.

The case was heard by *Morton*, J., who made a memorandum of decision as follows: "I see nothing inequitable or unjust in the proposed scheme. The master finds that the net value of the common stock, after the proposed reduction, will not be in excess of $100 a share, and that the proposed scheme, if carried out, will result in no pecuniary gain to the defendants, except in so far as it will enable the company to conduct its business profitably in the future. He finds that the defendants have a little more than a majority now of each class of stock, and that if the proposed reduction and increase are carried through, and they take what they will be entitled to, they will then only have a little more than a majority of each class of stock. He finds that, owing to their having very much less of the preferred stock, the plaintiffs will lose in voting power. But that seems to me to be unavoidable. The master finds that the defendants are acting in entire good faith, and I see nothing to lead me to question the correctness of that finding. Under the proposed plan every stockholder, common and preferred, will have the right to subscribe for his proportion of the increase, and if a majority of the stockholders of each class think that the plan that is proposed is, under all the circumstances, the best plan, and vote to adopt it, I do not see how the rights of the minority are interfered with. The result is that I think that the exceptions to the master's report should be overruled, the temporary injunction dissolved, and the bill dismissed, and it is so ordered."

By order of the justice a final decree was entered accordingly; and the plaintiffs appealed.

*A. Hemenway*, (*A. G. Mitton* with him,) for the plaintiffs.

*W. L. Putnam*, (*J. L. Putnam* with him,) for the defendants.

BRALEY, J. The master reports, and the plaintiffs concede, that the vote of the directors to call a meeting of the stockholders to reduce, and then increase the common capital stock was not

in pursuance of a scheme devised by the individual defendants to deprive the plaintiffs, who are minority stockholders, of their proportionate interest, and to reduce the value of their stock. It also must be held under the allegations of the bill, that the questions raised by the plaintiffs' exceptions were properly considered by the master as involved in the suit, and, the evidence not having been reported, his findings so far as material should not be reversed. The report leaves no doubt that the financial condition of the company required new capital, or there was danger of liquidation, and that the plan proposed by the directors for submission to the stockholders is not only feasible, but will afford the relief desired. But if the defendants acted in good faith, and funds sufficiently ample to pay corporate debts and to purchase new machinery were needed, the plaintiffs contend that the plan inevitably creates an unjust discrimination between the different classes of stock and gives to the preferred stock an undue advantage at the expense of the common stock. It being averred in the bill and admitted by the answer, that the individual defendants own a majority of the entire capital stock, the adoption of the plan by the stockholders is reasonably certain, and the plaintiffs were not required to await the result of the meeting before seeking injunctive relief. *Rogers* v. *Nichols*, 186 Mass. 440.

To decide the questions presented it becomes material to inquire into the corporate powers and organization of the company, and to ascertain the relative rights of the plaintiffs as holders of the common stock. The master states, that the capital consists of ten thousand shares each of the par value of $100, divided into eight thousand shares of common and two thousand shares of preferred stock. The preferred stock is entitled to six per cent cumulative dividends before any dividend is payable on the common stock, and, if more than six per cent on both classes becomes available for dividends, the preferred stock is to share the excess equally with the common stock. If the corporation goes into liquidation, the holders of the common stock are postponed in the distribution of assets, until the holders of the preferred stock have received the value of their shares with all accumulated dividends. Before the enactment of the St. of 1902, c. 441, preferred stock was unknown to our general laws relating to the organization and powers of manufacturing corporations,

although in some instances which are referred to in *American Tube Works* v. *Boston Machine Co.* 139 Mass. 5, 9, this right had been granted by special charter. See also St. 1885, c. 349; *Field* v. *Lamson & Goodnow Manuf. Co.* 162 Mass. 388. The date of the company's incorporation is not given, but we assume from statements in the report that it was organized under the general laws without any classification of its capital, St. 1851, c. 133; Gen. Sts. c. 61; St. 1870, c. 224; Pub. Sts. c. 106; R. L. c. 110, and that in accordance with the provisions of §§ 40 and 41 of the St. of 1903, c. 437, which by § 95 repealed the St. of 1902, c. 441, the agreement of association was lawfully amended dividing its stock into the classes and proportions as previously stated. By § 27 of this statute, "every corporation may create two or more classes of stock with such preferences, voting powers, restrictions and qualifications thereof as shall be fixed by the agreement of association . . . or in an amendment to said agreement or articles which may be adopted as hereinafter provided." But if authority is conferred to classify capital, the expediency of issuing two classes of stock, and the proportions which each class shall bear to the entire capital, and the preferences to be given to one class over the other, are left wholly to the associates who organize the corporation and become parties to the agreement of association in which the extent and character of the preference must be expressed, or to the determination of two thirds of all its stock at a meeting called for the purpose where the agreement of association is so amended after organization as to provide for such classification. St. 1903, c. 437, §§ 7, 8, 40, 41. It is to be inferred that the preliminary requirements of §§ 40 and 41 were followed, and the company, having been empowered to create preferred shares, could give such shares a preference, not only as to dividends, but as to repayment of capital and accumulated dividends in the event of liquidation. The provision thus adopted constituted a contract between all the stockholders and the company for the division of profits and assets. *Williston* v. *Michigan Southern & Northern Indiana Railroad,* 13 Allen, 400. *Roberts* v. *Roberts-Wicks Co.* 184 N. Y. 257. *McGregor* v. *Hotel Ins. Co.* 6 Stew. 181. *Hackett* v. *Northern Pacific Railway,* 140 Fed. Rep. 717. *In re Bangor & Portmadoc Slate & Slab Co.* L. R. 20 Eq. 59. *In re Barrow Haematite Steel Co.* 39 Ch. D. 582, 602; [1900] 2 Ch.

846. *In re Quebrada Railway, Land & Copper Co.* 40 Ch. D. 363. And § 26 recognizes this relation by requiring that each original certificate, and each subsequent certificate of preferred stock and of common stock, shall have plainly written or stamped upon it a sufficient statement of the preference or limitation. By § 40 the power to reduce or increase the capital is authorized upon a majority vote of each class of stock, and under the proposed plan to raise new capital without increasing the authorized capital, it would be necessary to reduce, and then to increase, the capital stock in such proportions as would produce the sum required. The plan, while not so expressed in terms, operates as a partial liquidation which would have to be borne equally by both classes of stock if the preference had been limited only to dividends. *Griffith* v. *Paget,* 6 Ch. D. 511. But the common stock cannot participate in any distribution of assets until the stipulated priority of the preferred stock as to both dividends and assets has been satisfied. If by the shrinkage of quick assets or of working capital, even if not sufficient to cause general liquidation, new capital must be raised by first reducing the outstanding capital and then increasing it within the authorized limit, the common stock, which under the contract assumed the burden, must be first resorted to even to the point of extinction before the preferred stock can be compelled to contribute. *Roberts* v. *Roberts-Wicks Co.* 184 N. Y. 257. *McGregor* v. *Hotel Ins. Co.* 6 Stew. 181. The power to reduce having been exercised, the capital stock then would be fixed at the amount of the reduction, which would leave the preferred shares unimpaired, while the common stock would be reduced from eight thousand to one thousand shares. It would then be lawful to increase the capital stock, and to issue new shares of common stock equivalent to the amount of the reduction. St. 1903, c. 437, § 40. When this had been accomplished all the stockholders would stand on a footing of equality except so far as preferential rights had been conferred, and in the distribution of new shares the holders of both classes of stock should be given the same option of subscription, which by the plan was rightly based as to the common stock not on the original number of shares, but on the number of such shares outstanding after reduction and cancellation. *Mason* v. *Davol Mills,* 132 Mass. 76. *D'Ooge* v. *Leeds,* 176 Mass. 558. *Jones* v. *Concord*

& *Montreal Railroad,* 67 N. H. 119.  *Stokes* v. *Continental Trust Co.* 186 N. Y. 285.

A majority of the entire stock can determine whether the plan proposed shall be adopted, not for the benefit or advantage of either class of stock, but, as the master finds, to enable the company to continue its business. The common stockholders held their shares subject to the rights of the preferred stockholders, and it is apparent that the individual defendants are not actuated by a desire to exercise their power of control in wanton disregard of the rights of the minority. If the disparity between them is increased by the necessary apportionment, the shrinkage in the number and value of their holdings, with the consequent loss of voting power, results from the proper and reasonable exercise by the company for its own benefit of the powers conferred by the statute. *Field* v. *Lamson & Goodnow Manuf. Co.* 162 Mass. 388, 395.

The decree of the single justice which overruled the plaintiffs' exceptions, confirmed the report and dismissed the bill should be affirmed with costs.

*Decree accordingly.*