LIZZIE J. JANES *vs.* THE WASHBURN COMPANY.

Worcester. February 7, June 26, 1950. — September 29, 1950.

Present: QUA, C.J., LUMMUS, RONAN, SPALDING, & WILLIAMS, JJ.

*Corporation,* Stockholder, Reorganization. *Contract,* Between corporation and stockholder. *Laches. Equity Jurisdiction,* Laches. *Estoppel. Words,* "Subsequently."

The right of a holder of preferred corporate stock to the preferences attaching to his stock is contractual.

In the provision in G. L. (Ter. Ed.) c. 156, § 42, authorizing a corporation to "change . . . the classes of its capital stock subsequently to be issued and their preferences and voting power," the word "subsequently" refers to stock issued subsequently to the stockholders' meeting at which the change is made; such provision has no application to stock already issued and outstanding before the meeting.

A holder of preferred corporate stock acquired at a time when G. L. c. 156, § 42, was in force and having certain preferences over the common stock in liquidation, dividends and voting rights did not lose such preferences through a duly voted and adopted recapitalization plan, to which he did not consent and from which he accepted no advantage, whereby all preferred and common stock was to be cancelled and a single class of stock was to be issued in substitution therefor.

Estoppel or laches of the plaintiff barring a suit in equity against a corporation by a holder of its preferred stock to enforce the preferences attaching thereto was not shown by the facts that he, although cognizant of a proposed recapitalization plan to cancel all preferred and common stock and to substitute a single class of stock therefor, was not present nor represented by proxy to oppose the proposed plan at a stockholders' meeting at which it was adopted and that he took no affirmative action to protest the plan until after it had become effective and most of the other stockholders had exchanged their stock for the new stock in accordance with it, where it also appeared that he did not consent to the plan, nor give the defendant any encouragement respecting it, nor accept any advantage from it, and that he brought the suit about three weeks after the plan had become effective.

BILL IN EQUITY, filed in the Superior Court on January 15, 1945, and afterwards amended.

Certain prayers of the amended bill were: 2. That the defendant "be required to pay to the plaintiff an amount

determined by taking the ratio between the accumulated dividends on her stock and the total accumulated dividends on the preferred stock of the company still outstanding and not exchanged, and applying the same to the total dividends paid by the company on its new capital stock, but not exceeding the accumulated dividends on her stock." 3. That the defendant "be permanently enjoined and restrained from paying any dividends on its new capital stock until all accumulations of dividends on the preferred stock of the plaintiff, held by the plaintiff, have been paid." 4. That the "rights of the plaintiff as a holder of preferred stock of the company be established, and that the defendant be enjoined from permitting any other stockholders of the defendant except the plaintiff and any other holders of its preferred stock to vote at any annual or special meeting of the defendant for so long as four . . . quarterly preferred stock dividends on the plaintiff's stock have accumulated and remain unpaid." 5. That the defendant "be ordered to specifically perform its contract with the plaintiff and enjoined from continuing breaches thereof." 6. That "if and in the event that it shall be determined that the action of the defendant was effective to cancel the preferred stock of the plaintiff, the defendant be ordered to rescind and/or modify such action to the extent necessary to reinstate the plaintiff in her former position." . "8. That the defendant be required to pay to the plaintiff the amount of dividends accrued on her preferred stock as of the date of termination of this action."

The suit was heard by *Leary*, J. A final decree dismissing the bill was entered. The plaintiff appealed.

*J. A. Crotty*, for the plaintiff.

*M. S. June*, (*C. B. Barnes, Jr.*, with him,) for the defendant.

Lummus, J. The bill in equity in this case was filed on January 15, 1945, and later was amended. The following facts are alleged. The plaintiff owns one hundred ninety-four shares of preferred stock of the defendant of the par value of $100, out of nine thousand four hundred seventy-

six shares issued, and six hundred eighty shares of common stock of no par value out of thirty-eight thousand two hundred ninety-one shares issued. The bill alleges the rights of stockholders to be as follows. The preferred stockholders are entitled to cumulative dividends at seven per cent a year, before any common dividend can be declared. In case of liquidation or dissolution, preferred stockholders must be paid the par value of their shares with any accrued dividends thereon before anything can be paid to the common shareholders. The preferred stock is callable at $110 a share plus accrued dividends. Preferred and common stock have equal voting rights, but when four quarterly preferred dividends shall remain unpaid, as was the case as early as the end of 1943, the common stock was to cease to have voting rights. The plaintiff does not complain in her capacity as owner of common stock, but, as she declares, "she brings this bill to establish rights arising out of her ownership of its [the defendant's] preferred stock."

The bill alleges further as follows. The defendant has not paid seven per cent dividends on the preferred stock for some time, and there are now accumulated unpaid dividends on each share of $70. On November 30, 1944, a recapitalization plan was voted by more than two thirds of each class of stock, to become effective when ninety per cent of each class of stock should be deposited, provided the directors should deem the amount sufficient to make the plan effective. More than the ninety per cent have been deposited, and prior to December 30, 1944, the directors declared the plan effective. In January, 1945, the new capital stock was issued. By the plan, all preferred and common shares were to be cancelled. Only one class of stock, called capital stock, of the par value of $20, was thereafter to exist. Three shares of the new capital stock were to be issued for one share of preferred stock, and one share for each ten shares of common stock. The assets of the defendant are sufficient to pay off the preferred stock at par plus all accrued dividends.

The plaintiff never consented to the plan. She complains

that the plan deprives her and other nonassenting preferred stockholders of their preference in liquidation, of their preference in dividends, and of their preference in voting rights when dividends are in arrears. She complains further that the book value of one share of the new capital stock distributed in place of ten shares of common stock exceeds substantially the book value of that common stock, whereas the book value of three shares of the new capital stock is less than that of one share of preferred stock with its accrued dividends. She complains that a dividend paid on January 20, 1945, on the new capital stock to former common stockholders has given them dividends which could not lawfully be paid until all her arrears of preferred dividends had been paid.

The case was heard on its merits by a judge of the Superior Court, who made findings substantially as follows. At the meeting held on November 30, 1944, the plan was adopted by a vote of more than ninety-seven per cent of the preferred stock and ninety-three per cent of the common stock. Only twenty shares of preferred stock, and no common stock, were voted against the plan. The plaintiff did not attend any meeting, nor was she represented, and she did not communicate any opposition to the defendant. The value of her preferred and common stock before the plan was $35,178.28, and the value of the new capital stock to be distributed to her was $35,028.50, a difference of $149.78. The facts stated in the bill are not in dispute.

From a final decree dismissing the bill with costs the plaintiff appealed.

In the absence of valid statutory power to change or abolish the privileges of preferred stock, it is settled that the right of a preferred stockholder to retain the preferences attaching to his stock is contractual and cannot be taken away without his consent. *Page* v. *Whittenton Manuf. Co.* 211 Mass. 424, 427. *Lee* v. *Fisk,* 222 Mass. 418, 420. *Thomas* v. *Laconia Car Co.* 251 Mass. 529, 533. *Joslin* v. *Boston & Maine Railroad,* 274 Mass. 551, 555. *Crimmins & Peirce Co.* v. *Kidder Peabody Acceptance Corp.* 282 Mass.

367, 375. *Crocker* v. *Waltham Watch Co.* 315 Mass. 397,
402. *Hurley* v. *Boston Railroad Holding Co.* 315 Mass. 591,
598. This is recognized in St. 1903, c. 437, § 26 (now G. L.
[Ter. Ed.] c. 156, § 33), by a provision, complied with in
the present case, that each certificate of stock entitled to
preference shall have a sufficient statement thereof written
or stamped upon it. *Page* v. *Whittenton Manuf. Co.* 211
Mass. 424, 428. *Lee* v. *Fisk*, 222 Mass. 418, 420. *Willson*
v. *Laconia Car Co.* 275 Mass. 435, 440. In respect to the
contractual nature of the rights of preferred stockholders
the law of Massachusetts is in accord with that of other
jurisdictions. *Keller* v. *Wilson & Co. Inc.* 21 Del. Ch. 391.
*Pronick* v. *Spirits Distributing Co.* 58 N. J. Eq. 97. *Roberts*
v. *Roberts-Wicks Co.* 184 N. Y. 257. *Davison* v. *Parke,
Austin & Lipscomb, Inc.* 285 N. Y. 500. *Wiedersum* v.
*Atlantic Cement Products, Inc.* 261 App. Div. (N. Y.) 305.
*Clark* v. *Henrietta Mills*, 219 N. C. 1. Fletcher, Cyc. Cor-
porations § 5296.

It follows that if the plaintiff has lost the preferences
attaching to her preferred stock it must be by virtue of
some applicable statute which formed a part of the contract
with preferred stockholders. The defendant relies on G. L.
(Ter. Ed.) c. 156, § 42,[1] which provides that "Every corpo-
ration may, at a meeting duly called for the purpose, by
vote of two thirds of each class of stock outstanding and
entitled to vote, . . . change its corporate name, the nature
of its business, the classes of its capital stock subsequently
to be issued and their preferences and voting power, or make
any other lawful amendment or alteration in its agreement
of association or articles of organization, or in the corre-
sponding provisions of its act of incorporation . . . ." This
section originated in St. 1903, c. 437, § 40. Preferred stock
was then new in this Commonwealth, having been first
provided for by St. 1902, c. 441 (repealed by St. 1903,
c. 437, § 95, but reëstablished by St. 1903, c. 437, § 27.
See G. L. [Ter. Ed.] c. 156, § 14; *Moseley* v. *Briggs Realty*

---

[1] The amendment to that section made by St. 1943, c. 38, § 1, is unim-
portant to the present case.

Co. 320 Mass. 278, 281). See *Page* v. *Whittenton Manuf. Co.* 211 Mass. 424, 426. It is clear that what is now G. L. (Ter. Ed.) c. 156, § 42, formed a part of the contract between the plaintiff and the defendant.[1] *Crocker* v. *Waltham Watch Co.* 315 Mass. 397, 402, and cases cited. *Langfelder* v. *Universal Laboratories, Inc.* 163 Fed. (2d) 804. *Morris* v. *American Public Utilities Co.* 14 Del. Ch. 136. *Johnson* v. *Bradley Knitting Co.* 228 Wis. 566, 574.

The decisive question is whether the vote of the defendant on November 30, 1944, was one to change the classes of its capital stock "subsequently to be issued," and their preferences and voting power, within the meaning of G. L. (Ter. Ed.) c. 156, § 42. We think that the word "subsequently" refers to stock issued subsequently to the meeting at which the classes of stock and their preferences and voting power are changed. In other words, that section has no application to the plaintiff's preferred stock, which was already in existence at the time of the meeting. The statute is prospective in its operation, and applies only to stock later to be issued. The decisive words were not in the bill when introduced in 1903, but were inserted by amendment as a limitation upon the powers granted by St. 1903, c. 437, § 40.

In the court below the judge based his dismissal of the bill upon the following findings; "I find that the plaintiff was fully cognizant of the plan some time before it was voted at the stockholders' meeting. She took no affirmative action either before or after until after the plan had been carried through and the rights of practically all the other shareholders had been finally changed. She was not present at the meetings and had not sent any proxy. She did not vote against the plan. By waiting until the change was consummated the plaintiff allowed most all the other preferred stockholders to exchange their stock and change their positions. The plaintiff was guilty of laches and is barred from recovering by estoppel."

---

[1] The plaintiff's preferred stock was acquired between 1922 and 1925. — REPORTER.

We are unable to concur in that view.  In the absence of
affirmative proof that the plaintiff consented to the proposed
plan, neither the defendant nor any stockholder had the
right to put upon the plaintiff any duty to object to it.  She
had a right to remain inactive, without thereby being taken
to consent or acquiesce.  In *Uccello* v. *Gold'n Foods, Inc.*
325 Mass. 319, 328, this court said, "Acquiescence is con-
duct from which may be inferred assent with a consequent
estoppel or quasi estoppel."  The plaintiff accepted no
advantage from the proposed plan.  She gave the defend-
ant no encouragement.  When the vote was taken on
November 30, 1944, and when the directors declared the
plan effective, it was known that she had not accepted or
approved it.  The defendant contended that a two-thirds
vote made it valid without her consent, and there is no
reason to think that any protest by her would have been
effectual.  The plaintiff brought her suit within twenty-
two days after the directors had voted to make the plan
effective.  "Laches is not mere delay but delay that works
disadvantage to another."  *Calkins* v. *Wire Hardware Co.*
267 Mass. 52, 69.  *Carter* v. *Sullivan,* 281 Mass. 217, 227.
*Norton* v. *Chioda,* 317 Mass. 446, 452.  We think that she
retained all her right to object to the plan.

It follows that the final decree dismissing the bill was
erroneous.  What must now be done is not fully clear.
Much that has happened since October 5, 1948, when the
final decree was entered, is not shown by the record.  The
plaintiff was entitled to cumulative quarterly dividends on
her preferred stock at the rate of seven per cent a year, and
such unpaid dividends amounted at the date of the filing
of the bill to $70 a share.  No dividends on other stock
could lawfully be declared until the dividends on the pre-
ferred stock were paid, yet a dividend on other stock was
paid in January, 1945.  Four quarterly preferred stock
dividends being in arrears, the preferred stock only had the
right to vote.  Possibly the practical way for the defendant
to get rid of the preferred stock of the plaintiff would be to
call the preferred stock still outstanding at $110 a share

plus all accumulated dividends. We have no means of knowing whether the defendant will take that course. It seems impractical for us at this time to do more than to reverse the final decree, and remand the case to the Superior Court for further proceedings not inconsistent with this opinion.

*So ordered.*