(158 App. Div. 110.)

PEOPLE ex rel. MERCANTILE SAFE DEPOSIT CO. v. SOHMER, Comptroller.

(Supreme Court, Appellate Division, Third Department. September 10, 1913.)

1. TAXATION (§ 376*)—CORPORATE FRANCHISE—MODE OF COMPUTATION—"DIVIDEND."

A corporation, of whose capital stock $300,000 had been issued, in 1875 purchased the good will, business, and lease of another company, which it succeeded in business, for $200,000. The lease was subsequently modified, renewed, and extended for a period of 50 years from January 1, 1901, with the privilege to the lessee of a further extension of 50 years. The lessor, to secure the surrender of such lease, paid such corporation $1,050,000 and gave a new lease for 23 years, subject to termination by either party on six months' notice. The corporation divided this sum among its stockholders and then reduced its capital stock to $100,000. In a proceeding to assess its franchise tax, there was no evidence as to the value of the lease which it purchased or the value of the lease for 23 years, and there was testimony indicating that the lease purchased was in force only until 1876, when a new lease was obtained. Held that, under Tax Law (Consol. Laws 1909, c. 60) § 182, providing for a franchise tax to be computed upon the basis of the amount of the capital stock employed "during the preceding year" within the state and upon each dollar of such amount at the rate of one-fourth of a mill for each 1 per centum of dividends made or declared upon the par value of the capital stock during the year, the amount paid for the surrender of such lease, less $200,000, was a "dividend," since it was no part of the capital but was a product of capital representing the corporation's profit on its lease.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 625, 629–631; Dec. Dig. § 376.*

For other definitions, see Words and Phrases, vol. 3, pp. 2143–2147.]

2. TAXATION (§ 376*)—CORPORATE FRANCHISES—MODE OF COMPUTATION.

Such franchise tax for the year during which such distribution and such reduction in the capital stock was made should have been computed upon the basis of $300,000 as the amount of the capital stock em-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ployed during the preceding year, since "during the preceding year" evidently means "within the preceding year" and does not require that all of the capital stock must be employed during the entire year in order to furnish the basis for the computation of the tax.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 625, 629-631; Dec. Dig. § 376.*]

**3. TAXATION (§ 376*)—CORPORATE FRANCHISES—MODE OF COMPUTATION.**

There being no testimony as to the value of the lease purchased by such company, such value should not be deducted from the price for which the lease was surrendered to ascertain the profits, especially in view of the facts that, in addition to the sum paid, the company obtained a new lease for 23 years, the value of which was not taken into consideration, and that the testimony indicated that the lease purchased was in force only until 1876.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 625, 629-631; Dec. Dig. § 376.*]

Original certiorari proceeding by the People, on relation of the Mercantile Safe Deposit Company, against William Sohmer, as Comptroller of the State of New York, to review his proceedings in determining a franchise tax against the relator. Determination of the Comptroller confirmed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Alexander & Green, of New York City (Allan McCulloh and Campbell E. Locke, both of New York City, of counsel), for relator.

Thomas Carmody, Atty. Gen. (Franklin Kennedy, Deputy Atty. Gen., of counsel), for respondent.

LYON, J. The relator was incorporated in December, 1875, under the laws of this state, with an authorized capital stock of $500,000, only $300,000 of which was ever issued. Immediately following its incorporation it purchased from the Mercantile Trust Company, which was carrying on the business of safe-keeping and guaranteeing personal property in the building of the Equitable Life Assurance Society at No. 120 Broadway in the city of New York, for the sum of $200,000, the good will, business, and lease of that company, and itself at once engaged in the prosecution of such business. The remaining $100,000 received from the sale of its capital stock the relator invested in dividend-paying securities and the same is still so invested. In January, 1883, the relator and the Equitable Society entered into a leasehold agreement which was the subject of later modifications, and which in October, 1900, was renewed and extended for the period of 50 years from January 1, 1901, with the privilege to the relator of a further extension of 50 years. During the months of January, April, and May, 1910, the relator paid to its stockholders dividends aggregating $38,250, or 12¾ per cent. upon its issued capital stock.

As one of the results of the insurance investigation of 1905, it appeared that the relator was paying but $23,000 yearly rental for premises, the rental value of which was $95,000 per annum, and accordingly an action was brought by the new management of the Equitable Society to obtain a cancellation of this lease. The suit was settled on

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

or about May 1, 1910, by the relator surrendering the lease and the Equitable Society paying to the relator the sum of $1,050,000 and giving a new lease for the term of 23 years with the privilege to either party, at any time, of terminating the lease by giving to the other party six months' notice of its desire so to do.  May 2, 1910, the relator divided pro rata among its $300,000 holders of stock said $1,050,000 and in July, 1910, reduced its capital stock to $100,000.  Concededly the capital stock of relator has at all times been worth at least par.

In fixing the amount of the annual franchise tax to be paid by the relator under the Tax Law (Consol. Laws, c. 60) § 182, the State Comptroller deducted from the said $1,050,000 the sum of $200,000 as representing the capital of the relator invested in its lease, good will and business, being the sum at which the same had been carried as an asset upon the books of the company, and treated the division of the same as a division of capital or assets, and treated the balance of $850,000, together with the sum of $38,250, the amount of the prior dividends, declared by the relator as before stated, or the total of $888,250, as the aggregate of the dividends made or declared by the relator during the year ending October 31, 1910, and assessed the same as the dividend paid upon $100,000 of capital stock, or at the rate of 888¼ per cent., and fixed the tax to be paid by relator at $22,206.25.  The Comptroller having refused to revise and readjust said assessment, the relator has brought the matter before us for review.

The relator in its petition for the writ of certiorari complains that the Comptroller erred in two particulars:  (1) In treating $850,000 of the said $1,050,000 as a dividend made or declared within the meaning of section 182 of the Tax Law; and (2) in assessing the tax upon the sum of $100,000 as being the par value of the capital stock of the petitioner during the year ending October 31, 1910.

[1] The first ground of complaint does not seem to be well founded. The sum of $850,000 was no part of the capital but was the product of capital.  It was derived from an increase in value of the assets of the company.  It represented the profit of relator upon its lease, and its division among the stockholders constituted a dividend from surplus profits.  Roberts v. Roberts-Wicks Co., 184 N. Y. 257, 77 N. E. 13, 3 L. R. A. (N. S.) 1034, 112 Am. St. Rep. 607, 6 Ann. Cas. 213; Lowry v. Farmers' Loan & Trust Co., 172 N. Y. 137, 64 N. E. 796; People ex rel. Pullman Co. v. Glynn, 130 App. Div. 332, 114 N. Y. Supp. 460, affirmed 198 N. Y. 605, 92 N. E. 1097; Commonwealth v. Western Land & Improvement Co., 156 Pa. 455, 26 Atl. 1034.

[2] As to the second ground of complaint we think the tax should have been computed upon the basis of $300,000 as the amount of the capital stock of relator employed during the preceding year.  That sum was the amount of the relator's capital stock from November 1, 1909, to July 7, 1910, a period of 8 months and 6 days, and $100,000 was the amount of relator's capital stock from July 7, 1910, to October 31, 1910, a period of 3 months and 24 days.  The dividends for the year, aggregating $888,250, were declared and paid before the reduction of the capital stock to $100,000 and constituted dividends of 296¹/₁₂ per cent. to each holder of the $300,000 of capital stock.  The statute requiring the payment to the State Treasurer, annually in ad-

vance of an annual tax "to be computed upon the basis of the amount of its capital stock employed during the preceding year within this state, and upon each dollar of such amount," should not be construed as requiring that all such capital stock must be employed during the entire year in order to furnish the basis for the computation of the tax. The expression "during the preceding year" was evidently used in the sense of "within the preceding year." Such seems to have been the construction given to it by the court in People ex rel. N. Y. C. & H. R. R. Co. v. Gaus, 200 N. Y. 328, 93 N. E. 988, in which it was held that the franchise tax should be computed upon the basis of the whole outstanding stock at the end of the tax year, and as a 6 per cent. stock, although about 20 per cent. of the stock had been outstanding but ten months and had paid a less dividend than 6 per cent., but at that rate per annum.

In the proceeding at bar the Comptroller assessed the dividends which had been paid to the holders of $300,000 of stock aggregating $296\frac{1}{12}$ per centum of the par value of the stock at three times that per centum, or at $888\frac{1}{4}$ per centum, upon one-third such amount of capital stock, claiming that under the case of People ex rel. N. Y. C. & H. R. R. Co. v. Gaus, supra, the amount of dividends paid must be assessed upon the amount of stock outstanding October 31, 1910, as the Comptroller had to assume that the amount of the then outstanding stock was the amount which would be employed the succeeding year. While the amount of tax to be paid by the relator would be the same in each case, we think the Gaus Case cannot be considered an authority for the proposition contended for. The question was not there up for determination, and in that case the capital stock of the relator was as large on October 31st as at any time during that tax year. We think the statute did not necessarily contemplate computing the tax upon the amount of the capital stock outstanding on October 31st. Such practice might give rise to abuses upon the part of corporations. The statute requires that the computation be upon the basis of the amount of the capital stock employed during the preceding year, within this state and upon each dollar of this amount, and that the tax shall be at the rate of one-fourth of a mill for each 1 per centum of dividends made or declared upon the par value of the capital stock during the year. As all the dividends were declared by the relator upon the whole $300,000 of stock and aggregated $296\frac{1}{12}$ per centum thereof, we think that was the basis which should have been adopted by the Comptroller in making the computation.

[3] In its brief the relator suggests that the value of the lease purchased by it from the Mercantile Trust Company should also be deducted from the sum of $1,050,000 in case the court should hold that such sum, less the price paid for the good will, business, and lease, constituted profits. The value of the lease so purchased by relator in 1875 was not attempted to be shown upon the hearing and there is nothing in the evidence from which its value can be ascertained.

Furthermore, the president of the relator testified that relator's original lease with the Equitable was obtained by it in 1876, which would indicate that the lease purchased by it from the Mercantile Trust Company was in force only to the time of procuring its original lease

in 1876. But, upon the other hand, relator received as consideration for the surrender of its lease not only the sum of $1,050,000, but also a lease for 23 years, the value of which the Comptroller did not take into consideration in fixing the amount of franchise tax. Possibly the value of each was difficult of determination or it may have been thought advisable to offset one against the other. In any event, no evidence whatever was offered as to the value of either lease, and both were entirely disregarded by both parties and hence are not to be considered by us upon this appeal.

We therefore conclude that the determination of the Comptroller should be confirmed. All concur.