## John P. Williston *vs.* Michigan Southern & Northern Indiana Railroad Company.

A certificate of shares of the guaranteed capital stock of a corporation contained this provision: " Said stock is entitled to dividends at the rate of ten per cent. per annum, payable semi-annually in New York, on the first days of June and December in each year, out of the net earnings of said company, and is also entitled to share *pro rata* with the other stock of the company in any excess of earnings over ten per cent. per annum; and the payment of dividends as aforesaid is hereby guaranteed." *Held,* that the holder of such certificate could not maintain an action at law against the corporation for a failure to declare and pay dividends as therein mentioned.

No equitable relief can be granted in this commonwealth against a foreign corporation which has neither officers nor place of business here, for a failure to declare and pay dividends according to the stipulations of their certificates of stock.

Contract against a foreign corporation. The declaration set forth the agreements contained in several certificates, issued by the defendants, of guaranteed stock, dated from June 29, 1857, to

January 18, 1858, respectively, and alleged that the defendants had made net earnings sufficient to pay in full the amount of dividends promised therein, but had neglected and refused to pay the same to the plaintiff, though requested. The certificates were alike in form, and contained the following language :

" This is to certify, that J. P. Williston is entitled to eighty shares of one hundred dollars each in the Guaranteed Capital Stock of the Michigan Southern and Northern Indiana Railroad Company, denominated Construction Stock. Said stock is entitled to dividends at the rate of ten per cent. per annum, payable semi-annually in New York, on the first days of June and December, in each year, out of the net earnings of said company, and is also entitled to share *pro rata* with the other stock of the company in any excess of earnings over ten per cent. per annum, and the payment of dividends as aforesaid is hereby guaranteed."

There was also a count for money had and received.

At the trial in this court, before *Chapman,* J., it appeared that the defendants were a corporation formed by the union of the Michigan Southern Railroad Company, incorporated in Michigan in 1846, and the Northern Indiana Railroad Company, incorporated in Indiana in 1851. The consolidation was duly effected in 1855.

The plaintiff offered in evidence the certificates declared on, which were admitted to have been duly signed and issued by the defendants ; and he also offered the following vote of the stockholders, passed in April 1857 :

" *Resolved,* That, for the purpose of providing means for the payment of the unfunded debts of this company, and for the completion of its unfinished works, the board of directors of this company be and are hereby authorized to create and to issue the whole (or such portion as they may deem necessary) of the authorized and unissued capital stock of this company, as a guaranteed stock, to be denominated ' Construction Stock ; ' and such guaranteed stock shall be entitled to dividends, payable in cash, semi-annually, in New York, at the rate of ten per cent. per annum ; and in the payment of such dividends, the said

guaranteed stock shall have preference and priority over the remaining stock of the company; and the said guaranteed stock may be issued for use and offered for sale, from time to time, as the board may deem necessary; but when the same, or any part of it, is offered for sale, it shall first be offered to the stockholders, *pro rata*, and upon such terms, and payable at such times and in such manner, as the directors may determine; and in case the same is not all taken by the stockholders, then the same may be disposed of by the board to other parties."

The directors accordingly, in May 1857, voted to create such stock to the amount of $3,000,000; and the plaintiff's shares were a portion thereof.

The defendants paid no dividend on this guaranteed stock until August 1863, since when they have paid semi-annual dividends of five per cent. thereon. And in August 1864 and March 1865 they paid dividends to the common stockholders of three and one half per cent. The annual reports of the directors for the years from 1857 to 1864 inclusive were offered for the purpose of showing what net earnings the defendants made in those years, and statements were also prepared and offered showing the disbursements of the company, the amounts of their funded and floating debts at the time of the creation of the guaranteed stock, and other particulars which became immaterial to the decision.

The plaintiff offered evidence to show that the defendants had used part of their earnings, since the guaranteed stock was issued, and before any dividends were paid, for the construction of new tracks, and other purposes not necessary for the operation and proper repair of the road; but the evidence was excluded.

The case was reserved for the determination of the whole court.

*P. W. Chandler & J. B. Thayer,* for the plaintiff. By his certificates, the plaintiff became not only a stockholder but also a creditor of the defendants. There is nothing incompatible in the two characters, or in the creation of them by the same instrument. *McLaughlin* v. *Detroit & Milwaukee Railroad,* 8

Mich. 100. *Sturge* v *Eastern Union Railway*, 7 De G., Macn. & Gord. 158. *Corry* v. *Londonderry & Enniskillen Railroad*, 29 Beav. 263. *Stevens* v. *South Devon Railway*, 9 Hare, 313. *Henry* v. *Great Northern Railway*, 4 Kay & Johns. 1, 21, 22. *Rutland & Burlington Railroad* v. *Thrall*, 35 Verm. 536, 545. There are three classes of stockholders. 1. Common stockholders. 2. Preferred stockholders. Both of these classes have no right to share profits except upon the declaration of a dividend. *Crawford* v. *Northeastern Railway*, 3 Kay & Johns. 744. 3. Guaranteed stockholders. The right of this class to dividends is absolute. The stock of the plaintiff in the defendants' company was preferred and guaranteed. This appears both from the votes of the stockholders and directors, and from the certificates. It is in substance a guaranty that net earnings shall be made. No other construction will satisfy the language used.

The reports show that there have been net earnings. There is a great difference between net earnings and net profits. The net profits are the gross earnings after deducting all expenses whatever. But the net earnings are the gross amount received after deducting the running expenses, but without deducting interest and other collateral expenses. Ascertained in this way, all the reports show that the defendants have made net earnings. And if the guaranty is not an absolute one, it is at any rate contingent only on the making of net earnings; and in bringing an action on such a guaranty, it is not necessary to wait for the formal declaration of a dividend. *Henry* v. *Great Northern Railway*, above cited. And this right, on any construction, extends to unpaid arrears. See cases above cited.

If in any aspect of the case it should be found necessary, the plaintiff may amend and convert this action into a suit in equity.

*G. T. Curtis & G. L. Roberts*, for the defendants.

FOSTER, J. In the opinion of the court, the holder of guaranteed stock, under such a certificate as the one now before us, is not, by the terms thereof, constituted such a creditor of the corporation, as to be entitled to maintain an action at law to recover payment of the stipulated dividends. These are declared

to be payable out of the net earnings. And the stockholder of this class is also entitled to share *pro rata* with the general stockholders in any excess of net earnings over ten per cent. per annum. After these provisions follows the clause relied upon by the plaintiff: " The payment of dividends as aforesaid is hereby guaranteed ; " and it applies as well to the *pro rata* share in the excess of earnings above ten per cent. as to the stipulation for dividends to that amount. The word " dividends " *ex vi termini* imports a distribution of the funds of a corporation among its members, pursuant to a vote of the directors or managers. And in the present instance we are satisfied that it must receive this, its ordinary legal and practical construction. We cannot conclude that the corporation entered into an engagement by which each guaranteed shareholder could semi-annually recover a judgment for undeclared dividends, and collect it upon execution in competition with the claims of creditors. The plaintiff as a stockholder is entitled to participate in the management of the company, and the corporate debts are created by officers and agents, in the election of whom each of his shares has a vote. The union of a right to receive a distributive share of the profits or net earnings with the right to enforce a payment of such a percentage as a debt would be unusual, if not incongruous. Each share represents a fixed and proportionate interest in the capital of the company, the intrinsic value of which consists in that of the railroad, its appendages, franchises and personal property, over and above the liabilities of the corporation. To suppose such a relation to be coupled with that of an ordinary contract to pay interest on a debt, and that the same contribution to capital constitutes at once a member and creditor of the company, would destroy all distinction between capital stock and corporate indebtedness. The guaranty expressed in the certificate relates to the disposition to be made of net earnings among different classes of shareholders, and cannot be construed as a contract for the payment of interest. The net earnings are the fund upon which the stipulated dividends are made chargeable, and the guaranty is an engagement for the application of that fund to a particular class, in preference to or priority over the common

and less favored stockholders. We do not find it necessary to consider carefully whether the phrase " net earnings," as here used, is equivalent to profits; although it may be observed that the same word " earnings " is employed with reference to the payment of dividends to ordinary stockholders in the latter part of the certificate.

An examination of the English cases cited for the plaintiff confirms our opinion that he must be regarded as a member of the company, and not an ordinary creditor. In all of them the struggle has been as to the degree of preference or priority enjoyed by preferred or guaranteed shares over those of a lower and less privileged description. They are all bills in equity, brought by certain shareholders on behalf of themselves and all others of the same class, to restrain the payment of dividends upon common stock. The relief prayed for and the remedy awarded have uniformly been a declaration of the extent of the rights of the higher class, and an injunction against making dividends upon common stock until the claims of the preferred or guaranteed stock were satisfied. We are aware of no case in which there has been a decree for the payment of either preferred or guaranteed dividends, but only that, until these had been paid pursuant to agreement, no dividends should be permitted to any lower class. We do not, however, intend to intimate that a court of equity of competent jurisdiction might not under some circumstances decree the payment of guaranteed dividends.

*Taft* v. *Providence & Fishkill Railroad,* an unpublished case in the supreme court of Rhode Island, strongly confirms the views we have expressed as to the character of the contracts created by virtue of a stock certificate almost exactly like the one in the present case. *McLaughlin* v. *Detroit & Milwaukee Railroad,* 8 Mich. 100, merely decided that, under a certificate bearing interest up to a certain date, and afterwards entitled to dividends, such interest could be collected as a debt. In that case there was a prepayment under an agreement that the party paying should receive interest on the money he advanced until it was treated as capital and began to participate in profits.

But the plaintiff suggests that, if the present suit cannot be maintained, it may be converted into a bill in equity. And if we possessed adequate jurisdiction to administer equitable relief in the premises, such an amendment of the form of action would be readily permitted. But the defendants are a foreign corporation, having no place of business or officers in this commonwealth. Service of the writ has been made cnly by trustee process, attaching funds in the hands of their debtors here. We have no power to control the action of the company, and no means of securing obedience to any injunction or other decree.

The suit in equity appropriate to the present case ought perhaps to be brought, as in the English cases, by the plaintiff on behalf of himself and all others similarly situated; especially if a decree is sought for the payment of dividends, and not a mere injunction against making dividends to shareholders whose rights are subordinate to those of the plaintiff. However this may be, we are satisfied that it is maintainable only in courts having general jurisdiction over the corporation. The amendment suggested would therefore be unavailing.

Having arrived at the conclusion that we can grant no relief, it would be unbecoming to express any further opinion upon the questions of construction so fully and ably argued. Our views, if announced, would bind the rights of neither party The duty of interpretation belongs to the tribunals which have power to enforce their opinions by an effectual decree.

*Judgment for the defendants.*