WANETA W. STROUT, Appellant, *v.* CROSS, AUSTIN & IRELAND LUMBER COMPANY, Respondent.

Argued June 14, 1940; decided July 24, 1940.

*Horace R. Lamb* and *Craigh Leonard* for appellant. Respondent's action attempting to provide for the payment of the dividend of $22.75 per share declared on respondent's first preferred stock is null and void in so far as it purports to require the holders of such stock to accept notes of respondent's subsidiaries in payment, satisfaction and discharge of arrears of dividend. (*Kent* v. *Quicksilver Mining Co.*, 78 N. Y. 159; *Roberts* v. *Roberts-Wicks Co.*, 184 N. Y. 257; *Ehle* v. *Chittenango Bank*, 24 N. Y. 548; *Breslav* v. *N. Y. & Queens Electric Light & Power Co.*, 249 App. Div. 181; 273 N. Y. 593; *Keller* v. *Wilson*, 190 Atl. Rep. 115; *Patterson* v. *Durham Hosiery Mills*, 200 S. E. Rep. 906; *Harbine* v. *Dayton Malleable Iron Co.*, 22 N. E. Rep. [2d] 281; *Lonsdale* v. *International Mercantile*

*Marine Co.*, 101 N. J. Eq. 554; *Kennedy* v. *Carolina Public Service Co.*, 262 Fed. Rep. 803; *Hastings* v. *International Paper Co.*, 187 App. Div. 404; *McQuillen* v. *National Cash Register Co.*, 27 Fed. Supp. 639.) Appellant is entitled to equitable relief. (*Bosley* v. *National Machine Co.*, 123 N. Y. 550; *City of Cincinnati* v. *Cincinnati & Hamilton Traction Co.*, 245 U. S. 446; *Simpson* v. *Union Stock Yards Co.*, 110 Fed. Rep. 799; *Pennsylvania* v. *West Virginia*, 262 U. S. 553; *Terrace* v. *Thompson*, 263 U. S. 197.) Appellant is not attempting to interfere in the internal affairs of the corporation. (*Breslav* v. *N. Y. & Queens Electric Light & Power Co.*, 249 App. Div. 181; 273 N. Y. 593; *Roberts* v. *Roberts-Wicks Co.*, 184 N. Y. 257; *Kent* v. *Quicksilver Mining Co.*, 78 N. Y. 159; *Lonsdale* v. *International Mercantile Marine Co.*, 101 N. J. Eq. 554; *Kennedy* v. *Carolina Public Service Co.*, 262 Fed. Rep. 803.)

*Charles A. Van Patten* and *Lowell M. Birrell* for respondent. With full knowledge of the facts appellant has accepted a substantial benefit from the act of which she complains. Accordingly she may not now disavow such act. (*N. Y., Lake Erie & W. R. R.* v. *Nichals*, 119 U. S. 296; *Wormser* v. *Metropolitan Street Railway Co.*, 184 N. Y. 83; *Treadwell* v. *United Verde Copper Co.*, 134 App. Div. 394; *Kent* v. *Quicksilver Mining Co.*, 78 N. Y. 159; *Frank* v. *Wilson & Co.*, 9 Atl. Rep. [2d] 82; *Bell* v. *Metz*, 224 App. Div. 377; 250 N. Y. 622.) Appellant failed to prove a cause of action in equity in that she seeks an unjustifiable interference with respondent's intercorporate affairs; she fails to show that any attempt at force or compulsion is being practiced upon her, and she fails to show irreparable injury and that there is no adequate remedy at law. (*Hastings* v. *International Paper Co.*, 187 App. Div. 404; *St. Lawrence Furniture Co.* v. *Binet*, 25 Dom. L. Rep. 316; *Terry* v. *Eagle Lock Co.*, 47 Conn. 141; *Williams* v. *Western Union Telegraph Co.*, 93 N. Y. 162; *Briggs* v. *Weaver Machinery Co.*, 14 B. T. A. 1351; *Howley* v. *Francis Press*, 127 App. Div. 646; *Pennsylvania* v. *West Virginia*, 262 U. S. 553.)

LEWIS, J. The plaintiff is the owner of a substantial portion of the cumulative preferred stock issued by the defendant upon which, in 1937, there were unpaid accumulated dividends amounting to twenty-two and three-quarters per cent. The defendant then assumed to discharge in full its obligation for such arrearage when it paid a dividend declared to be " in the amount of $22.75 per share " of which the media of payment were two-fold — a small portion thereof was paid in cash, the balance was paid by distributing to preferred stockholders income notes issued by two of the defendant's wholly owned subsidiaries. Having had no notice of the defendant's plan thus to discharge its obligation to its preferred stockholders and never having consented thereto, the plaintiff retained that portion of the dividend paid in cash but rejected and returned to the defendant the income notes. It is the plaintiff's claim that to the extent of the face value of the income notes the dividend was illegally declared and did not satisfy the defendant's legal obligation to her as a preferred stockholder.

The Appellate Division has unanimously affirmed the judgment at Special Term dismissing the plaintiff's complaint upon the merits. Upon the record, which is now before us by our leave, the plaintiff asks a diversity of relief — to a portion of which we believe she has established her right in equity.

The defendant is engaged in the lumber business in New York city. Its capital structure includes, in addition to other classes of junior stock, 7,500 shares of first preferred seven per cent cumulative stock of $100 par value. The first preferred stock is not widely distributed. Its entire amount is held by forty-one owners, one of whom is the plaintiff, who owns 515 shares. Between May 1, 1930, and April 30, 1935, the defendant suffered serious operating losses which impaired its working capital and caused the suspension of dividends on the first preferred stock from May 1, 1932, until July 31, 1935. In the fall of the latter year dividends on the first preferred stock were resumed and were paid for more than a year. Meantime, however, there

remained unpaid the arrears in dividends on the first preferred stock for prior years.

In the latter part of 1936 the business of the company improved and was such that its directors apparently anticipated earnings in excess of regular dividend requirements on the first preferred stock for the fiscal year ending April 30, 1937. We are told they were also aware that unless such earnings were paid out as dividends the company would be subject to a high surtax under the Federal undistributed earnings tax. As there were then due and unpaid upon the preferred stock twenty-two and three-quarters per cent of accumulated dividends, any dividends declared were required to be paid upon that stock. It was also determined by the company's executives that its liquid assets had been so impaired and its bank indebtedness was so great that cash dividends sufficient to satisfy the Federal tax law were inadvisable. It was in those circumstances and in an effort to pay the arrears of dividends on the first preferred stock without disturbing the company's needed liquid capital that the defendant's board of directors took the action which the plaintiff claims adversely affected her rights as a holder of first preferred stock and led to the present controversy.

On April 16, 1937, when the accumulated arrears of dividends upon 515 shares of first preferred stock owned by the plaintiff was $22.75 per share, amounting in all to $11,716.25, the defendant's board of directors adopted the following resolution: " Resolved, that a dividend in the amount of $22.75 per share be and the same hereby is declared upon the first preferred stock of this corporation, distributable to the holders of record of such stock as of the 20th day of April, 1937."

Thereafter, but at the same meeting, the board adopted another resolution which made provision for the payment of the dividend of " $22.75 per share," theretofore declared, by distributing to the prefered stockholders for each share owned, two dollars and seventy-five cents in cash and twenty dollars face amount of fifty-year income notes issued by the

defendant's subsidiaries. The resolution directing such payment was as follows:

" Resolved, that the dividend, in the amount of $22.75 per share declared upon the first preferred stock of the corporation and amounting to a total of $170,625.00 on the 7,500 shares of first preferred stock outstanding, be paid by the pro rata distribution to the holders of such stock of the following:

" $100,000 principal amount of 5% 50 year income notes of Adams, Fowler & Hoffman, Inc.

" $50,000 principal amount of 5% 50 year income notes of R. B. Everett Lumber Company, Inc.

." $20,625 cash."

In reference to the "income notes" of the defendant's two subsidiaries, which were to be distributed by the defendant at their face value, it should be said that in each instance the note states that the interest thereupon of five per cent is payable semi-annually, " if and only to the extent that the available net income, as that term is defined herein, of the [subsidiary] corporation shall suffice for such payment   *   *   *."

The plaintiff, who resides in Denver, Col., had no notice of the dividend action by the defendant's board of directors until she received from the defendant a circular letter dated April 21, 1937, addressed to all holders of its first preferred stock, and inclosing to her a check in the amount of $1,416.25 and two fifty-year income notes issued and registered in her name — one fifty-year note of Adams, Fowler & Hoffman, Inc., of the face amount of $6,866.70, due April 30, 1987, and one fifty-year note of R. B. Everett Lumber Company, Inc., of the face amount of $3,433.30, due April 30, 1987. After advising her of the dividend action taken by defendant's board of directors and having reviewed the business experience of the defendant company and its subsidiaries, the letter stated in part:

" *   *   *   The arrears in dividends on the First Preferred Stock of Cross, Austin & Ireland Lumber Company are 22¾% which on an issue of $750,000 amounts to

$170,625. The clearing up of these arrears is the subject of this letter.

" It will be seen from the foregoing that the parent company in addition to owning all of the Common Stock of the two subsidiaries, has held their Fifty Year Income Notes in an aggregate amount of about $165,000. These notes are entitled to cumulative interest at 5%. There is good reason to believe that these companies, under the supervision and control of the parent company, will be profitable enterprises and under ordinary circumstances Cross, Austin & Ireland Lumber Company would continue to hold its entire investment in them.

" The Board of Directors has given earnest consideration to the problem of disbursing the company's earnings to avoid penalty taxation and at the same time conserve cash and has concluded that it is to the best interest of the company and the holders of First Preferred Stock alike, that the arrears on this stock be paid in full by the distribution of the major portion of the company's holdings of the Income Notes of Adams, Fowler & Hoffman, Inc. and R. B. Everett Lumber Company and a lesser amount of cash. Accordingly, the Board has voted a dividend of $22\frac{3}{4}\%$ on the First Preferred Stock payable to holders of record on April 20, 1937 in the following manner by check $2\frac{3}{4}\%$, in Income Notes of Adams, Fowler & Hoffman, Inc. $13\frac{1}{3}\%$ and in Income Notes of R. B. Everett Lumber $6\frac{2}{3}\%$. Check and notes in the correct amount duly drawn to the order of and registered in the name of the respective stockholders are enclosed herewith.

" Under the Federal Tax Law of 1936 dividends may be paid in money or property, payment in either form exempting the disbursing corporation from penalty taxation to the extent of such payments, provided distribution is made prior to the close of the fiscal year in which credit for payment is taken. Such dividends, whether in cash or property, must be fully reported as income by the recipient. You are, therefore, advised that the entire $22\frac{3}{4}\%$ should be included in your 1937 Income Tax Return as Current

Income. You are requested to deposit check promptly. * * *."

Being thus advised by the defendant that the fifty-year notes and cash were distributed to her in full payment of arrears of twenty-two and three-quarters per cent in dividends accrued upon the amount of preferred stock which she owned, and that she should report as taxable income not only the cash so received but also the face value of the income notes, the plaintiff promptly wrote the defendant that she had not consented to the method adopted by the defendant in its plan thus to make full payment of the arrears of twenty-two and three-quarters per cent in dividends then due upon her holdings of first preferred stock and that she would return the income notes and the amount of the check which she had received. In reply the defendant's president advised her by letter that " There would be no point in mailing back the certificates. The Company could not accept them except to hold them in safe keeping for your account * * *." Thereafter the plaintiff returned to the defendant the two income notes which had been issued and registered in her name, having a total face value of $10,300 and which the defendant now holds for her for safe keeping.

Preferred stock issued by a stock corporation may grant to the stockholder a variety of rights depending largely upon the financial requirements of the corporation at the time the stock is issued. Whatever preferential rights and privileges may thus be granted to a stockholder, the law regards them as contractual. " The certificate of stock is the muniment of the shareholder's title, and evidence of his right. It expresses the contract between the corporation and his costockholders and himself; and that contract cannot, he being unwilling, be taken away from him or changed as to him without his prior dereliction, * * *." (*Kent* v. *Quicksilver Mining Co.*, 78 N. Y. 159, 184; *Roberts* v. *Roberts-Wicks Co.*, 184 N. Y. 257, 263.)

In the case at bar the certificates of first preferred stock issued by the defendant and owned by the plaintiff stated

the preferential rights to which she was entitled, which recital is in part as follows: " The First Preferred Stock, consisting of seventy-five hundred (7,500) shares of the par value of One Hundred Dollars ($100) each, shall be entitled to vote and to a seven per cent (7%) cumulative annual dividend * * *." Treating that statement as an expression by the defendant corporation of its contractual obligation to the plaintiff as an owner of its first preferred stock, we construe its language as the defendant's agreement to pay the plaintiff in cash cumulative annual dividends of seven per cent of its par value. Undoubtedly, in the event a corporation has a surplus, it is within the fair and honest discretion of its board of directors, uncontrolled by the courts, to determine whether a dividend shall be declared and, if so, whether it shall be paid in cash or property. (*Williams* v. *Western Union Telegraph Co.*, 93 N. Y. 162, 191, 192.) Where, however, as in the instant case, a corporation has, by the issuance of preferred stock in accord with its charter provisions and applicable law, granted preferential rights and privileges to stock issued by it and then outstanding, it cannot disregard what the law regards as contractual obligations which it has thus undertaken in connection with its stock.

We do not find in the record at hand evidence of an effort by the plaintiff to interfere with any matter which is lawfully within the control of the defendant's board of directors. There is no charge by her of fraud or mismanagement; there is no effort on her part to compel the defendant to declare a cash dividend. Asserting only her contract rights as an owner of the defendant's first preferred stock, she refuses to accept in payment of arrears in dividends upon her holdings the fifty-year income notes already described. We agree with the plaintiff's position that the defendant's obligation to her as an owner of its first preferred stock may not legally be thus satisfied in the absence of her consent to such action. She cannot be compelled to accept a property dividend. (*Williams* v. *Western Union Telegraph Co.*, 93 N. Y. 162, 192. See Thompson on The Law of Corporations [3d ed.], vol. 7, § 5261.)

In reaching that conclusion we have not disregarded the rule in *Hastings* v. *International Paper Co.* (187 App. Div. 404), cited by Special Term and stressed by the respondent upon this appeal. But we note from the opinion in that case a statement which is significant to our present inquiry (p. 409): " The board merely declared a plan to adjust and settle deferred dividends upon the corporation's preferred stock, *with such of the holders thereof as were willing to accept such settlement,* by paying seven and one-half per cent of such accumulated dividends in cash, fourteen per cent thereof in preferred stock, and twelve per cent in the common stock of the corporation." In that case the proposal of a plan for adjusting accrued dividends was sent by the corporation to its preferred stockholders which proposal stated that the board of directors had voted " to offer to such Preferred Stockholders of the Company *as shall accept the offer* and deposit their stock as hereinafter provided, *in full settlement of all unpaid dividends* " (p. 407). The facts with which the court dealt in the *Hastings* case *(supra)* differ widely from those in the present case where, as we have seen, the defendant forwarded to the plaintiff without prior notice of the dividend action, the cash and the income notes already issued to her and registered in her name. The letter of transmittal and her subsequent correspondence with the defendant's president not only gave her notice that the corporation offered her no choice whether as a first preferred stockholder she was willing to accept the income notes in part payment of arrears in dividends upon her stock but it notified her that the Federal Income Tax officials had been advised that she had been paid such arrears in dividends in full. By the action thus taken by the defendant, despite plaintiff's refusal to consent thereto, the defendant's corporate records show that she has been paid in full the amount of arrears of dividends accumulated as of April 20, 1937, upon her first preferred stock. So long as the fifty-year income notes of defendant's subsidiaries remain issued and registered in her name she is the ostensible owner thereof. The defendant's records will show payment

of such arrears in accumulated dividends and her right in the future to receive such dividends in cash has been jeopardized and constitutes irreparable injury.

Likewise the information filed by the defendant with Federal Income Tax officials relating to the payment of the dividend declared on April 16, 1937, shows a payment of that dividend in full to the plaintiff who, in turn, has never reported the face value of the income notes among dividends received by her because she has refused to accept the same.

In these circumstances we believe Special Term erred in refusing to exercise its powers in equity in the plaintiff's favor. Relief in equity is not to be withheld from the plaintiff because, as suggested by the defendant, she has retained that portion of the dividend declared by the defendant on April 16, 1937, which was paid in cash. She is under no duty to return that which she is entitled to receive in any event. Her duty is to return only that which she would not be entitled to keep if she is successful in this action. (*Gould* v. *Cayuga County Nat. Bank*, 86 N. Y. 75, 81; *Kley* v. *Healy*, 127 N. Y. 555, 561, 562; *E. T. C. Corp.* v. *Title Guar. & Trust Co.*, 271 N. Y. 124, 128.) A judgment in her favor in the present suit will not determine that the action of the board of directors was invalid as to the consenting stockholders. By retaining the cash portion of the dividend the plaintiff is not accepting a benefit under proceedings of the board of directors claimed to be wholly invalid. In the present action her single challenge goes to the power of the board of directors to force her to accept 50-year income notes as part payment of a dividend designed by the defendant as a means to discharge its obligation to pay arrears in dividends due upon first preferred stock. The payment made in cash she does not question. We do not decide whether the board of directors intended on April 16, 1937, to declare a dividend generally or one of cash and income notes. That question is presented in a pending action at law brought by the plaintiff to recover the amount represented by the income notes. If the action of the board of directors was a declaration of a dividend generally, the

plaintiff is entitled to retain what she regards as part payment in cash. If it was a declaration of a cash and income note dividend, the cash dividend is severable from the dividend of income notes, and plaintiff may keep the cash.

Defendant, on April 16, 1937, and thereafter, as owner of these income notes, has carried through the formalities necessary to issue and register in plaintiff's name the two notes forwarded to her in its letter of April 20, 1937. Upon this adjudication she has the right to require the defendant, as owner, to carry through formalities necessary to cancel the registration of such notes in her name and to annul its illegal action in relation to them. (Cf. *Bosley* v. *National Machine Co.*, 123 N. Y. 550, 555.)

The judgments should be reversed, with costs to appellant, and the case remitted to the Special Term with directions to proceed in accord with this opinion.

LEHMAN, Ch. J., LOUGHRAN, FINCH, RIPPEY, SEARS and CONWAY, JJ., concur.

Judgments reversed, etc.