Henry Clay Greenberg, J.
Plaintiffs, owners of 100 shares of the 372,256 shares outstanding of New York Water Service Corporation (hereinafter “New York Water”), have brought this derivative action to compel the distribution to stockholders of the surplus and liquid assets resulting from the taking in condemnation of several of its properties. Such relief sought in the second and third causes of action by reason of alleged breach of trust and fiduciary obligation on the part of the individual defendants, directors of New York Water, is bottomed on the allegations of the first cause of action that the reinvestment of the afore-mentioned surplus and liquid assets in securities of a nonwater works character is unauthorized, ultra vires and illegal.
Defendants have now moved, on the basis of documentary evidence and official records establishing the existence of the required power and authority, for partial summary judgment as to the first cause and, upon the granting therof, for dismissal of •the second and third causes for failure to state a cause of action.
The primary inquiry, therefore, is as to whether New York Water has general stockholding and investment powers. If it be determined that it has, plaintiffs cannot prevail unless there is presented a strong case of bad faith, fraud, breach of trust or a clear abuse of discretion on the part of its directors sufficient to justify interference in corporate management by judicial fiat compelling the declaration of a dividend (Gordon v. Elliman, 306 N. Y. 456; City Bank Farmers Trust Co. v. Hewitt Realty Co., 257 N. Y. 62; Hastings v. International Paper Co., 187 App. Div. 404).
Although New York Water’s own charter, issued under an act of 1873, failed to contain any provision authorizing the acquisition of stocks of any other corporation, it became subject *269 to the provisions of the Stock Corporation Law, including section 18, which permits any stock corporation, other than a moneyed corporation, to purchase, acquire, hold and dispose of the stocks and bonds of any corporation, domestic or foreign, if so authorized in its certificate of incorporation, or if the other corporation is engaged in a similar business or is a customer or supplier of the purchasing corporation, or if the other corporation is one with which the purchasing corporation is or may be authorized to consolidate.
New York Water has over the years acquired various waterworks properties by merging into itself the corporations owning such properties. Two of such waterworks corporations were specifically authorized in their certificates of incorporation to purchase, acquire, hold and dispose of the stocks and bonds of ‘ ‘ any corporation, domestic or foreign. ’ ’ Since section 85 of the Stock Corporation Law provides that ‘1 all of the estate, property, rights, privileges and franchises ” of the merged corporation shall vest in and be held and enjoyed by the possessor corporation “ as fully and entirely and without change or diminution as the same were before held and enjoyed” by the merged corporation, these general stockholding and investment powers vested as the result of said mergers in New York Water. The only limitation upon such power — that the possessor corporation shall not thereby acquire power to exercise any right, privilege or franchise which it could not “ lawfully engage in or exercise under the provisions of the law” pursuant to which it was organized — is clearly inapplicable, since the provisions of law governing New York Water permit the acquisition of stocks of other corporations and the provisions of law governing the organization of waterworks corporations permit them, where so authorized, to lawfully exercise the power to purchase the stocks of any corporations.
In 1931 New York Water acquired the stock of The South Bay Corporation, another waterworks corporation. This, of course, was permitted under the provisions of section 18, since South Bay was engaged in a similar business and was also a corporation with which New York Water was authorized to consolidate. South Bay had the specific conferred power to acquire and hold the securities of any corporation. It is through South Bay and its subsidiaries that New York Water recently has purchased and acquired substantial blocks of marketable securities, utilizing principally the cash proceeds received upon condemnation of various properties.
As a matter purely of the legal use of power, it is clear that New York Water had the right to acquire the stock of South *270 Bay and that South Bay has the right to purchase and hold the stock of any corporation. The fact that South Bay has discontinued its waterworks function is immaterial, since its corporate powers under its certificate as amended continue.
The only remaining question is whether on the undisputed facts a finding of bad faith, fraud or clear abuse of discretion could be made.
It is true that since 1947 various of New York Water’s properties have been taken by governmental agencies in condemnation proceedings and that large cash holdings were thereby acquired. Its board of directors determined that it would not be advisable at this time because of tax considerations to distribute these funds to the stockholder's and adopted a plan of investment of surplus funds until the problem could be satisfactorily solved. This plan has obviously met with the approval of almost all of the stockholders, who have continued to support the present management, and the price of the stock has risen considerably in the stock market. Although plaintiffs talk of the compulsory liquidation of its entire waterworks operations by virtue of the continually advancing concept of government ownership of such utilities, the five remaining properties of New York Water still represent a substantial operation, with cost of utility property in excess of 12 million dollars and operating revenues in 1959 of about 3 million dollars. Certainly, these waterworks operations are far from obsolete, as was the case in Kroger v. Jaburg (231 App. Div. 641).
It is the function of the directors of a corporation to determine its dividend policy and dispose of its surplus. Their action is conclusive in the absence of bad faith or private advantage. The allegations as to retention of these funds for investment purposes for private benefit are wholly conclusory. There is no allegation of fact set forth to indicate that the failure to distribute is based on bad faith or any grounds warranting the drastic relief requested.
It may be that, in the case of a close corporation, a minority stockholder might under certain circumstances have just cause to complain if the directors chose to invest surplus funds not needed in the ordinary operation of the business rather than distribute same as dividends to all stockholders. Here, however, plaintiffs can sell their stock in the market and at a considerable profit. Defendants’ motions are accordingly granted.